ROGER W. MONKS & another[1] *vs.* ZONING BOARD OF
APPEALS OF PLYMOUTH & another.[2]

No. 93-P-1258.

Plymouth. May 19, 1994 - November 28, 1994.

Present: DREBEN, JACOBS, & PORADA, JJ.

*Zoning,* Appeal, Special permit, Person aggrieved. *Practice, Civil,* Zoning
appeal, Standing, Parties, Summary judgment.

The specific provision of a particular zoning by-law conditioning the grant
of a special permit on a finding that "the proposed structure will not in
any way detract from the visual quality of the neighborhood," was suffi-
cient to confer standing for summary judgment purposes on plaintiffs
who challenged the grant of a permit for construction of a one hundred
and ninety foot tower in their residential zoning district that would be
clearly visible from their house. [687-689]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 24, 1991.

A motion for reconsideration of a motion for summary
judgment was heard by *John J. O'Brien,* J.

*John H. Wyman* for the plaintiffs.

*Sigmund J. Roos* for Southwestern Bell Mobile Systems,
Inc.

JACOBS, J. When the defendant board of appeals granted
the defendant Cellular One a special permit to construct a
tower measuring 190 feet in height, the plaintiffs brought a
complaint in the Superior Court pursuant to G. L. c. 40A,
§ 17, seeking annulment of the permit. After its motion for
summary judgment alleging that the plaintiffs lacked stand-
ing was denied, Cellular One sought reconsideration before

---

[1] Bernadette M. Monks.

[2] The other defendant was named in the complaint as "Cellular One." In
the course of pretrial submissions, this defendant described itself as
Southwestern Bell Mobile Systems, Inc., doing business as Cellular One.

another judge claiming that *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129 (1992), decided after the denial of the motion, required rejection of the plaintiffs' claim of standing. This appeal ensued when the second judge allowed the motion for reconsideration and ordered summary judgment dismissing the plaintiffs' complaint.

The parties' submissions under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), establish that the plaintiffs own a home on the westerly shore of Bloody Pond in Plymouth approximately 1,500 feet[3] to the west of the proposed tower site and separated from it by the pond, a conservation forest area, and a highway (Route 3). Both the tower site and home are located within the same "rural residential" zone as defined by the town of Plymouth zoning by-laws. An affidavit filed in behalf of the plaintiffs asserts that all commercial uses are prohibited in that zone and that the minimum permitted lot size is 60,000 square feet.

The special permit was granted under the following zoning by-law:

> "*300.09 HEIGHT*
>
> NO STRUCTURE SHALL BE BUILT, CON-STRUCTED, ERECTED, OR ADDED TO ABOVE A HEIGHT OF THIRTY-FIVE (35) FEET; EXCEPT UTILITY POLES, WHICH SHALL NOT BE MORE THAN FORTY-ONE (41) FEET; WITHOUT A

---

[3]The judge, apparently relying on an affidavit submitted in behalf of the defendants and on the deposition of one of the plaintiffs, found that the plaintiffs' home is "roughly one-half mile" from the proposed tower site. In doing so, he overlooked the affidavit of a plaintiff estimating the distance as "some fifteen hundred feet" and the general principle that inferences or conclusions based upon rule 56 submissions must be viewed in the light most favorable to the opponent of the motion for summary judgment. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982). That distance and the broad reach of the zoning by-law under which the special permit was granted insulate the plaintiffs from any linear limitation intimated in *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 63 n.17 (1977)(after noting that the plaintiff had no property interest in the immediate neighborhood, the court expressed "grave doubts about granting standing to any person whose property interest is approximately 1800 feet . . . away from the site" in issue).

SPECIAL PERMIT FROM THE BOARD OF AP-
PEALS, AFTER A FINDING BY THE BOARD
THAT THERE IS NO FEASIBLE ALTERNATIVE
TO THE PROPOSED HEIGHT, THAT IT IS THE
MINIMUM NECESSARY, THAT THERE IS A
CLEAR AND SPECIFIC PUBLIC BENEFIT
WHICH MAY BE REALIZED ONLY BY EX-
CEEDING 35′ IN HEIGHT, AND THAT THE PRO-
POSED STRUCTURE WILL NOT IN ANY WAY
DETRACT FROM THE VISUAL CHARACTER
OR QUALITY OF THE ADJACENT BUILDINGS,
THE NEIGHBORHOOD OR THE TOWN AS A
WHOLE."

In their rule 56 submissions the plaintiffs claim that they constructed and situated their home "to take maximum advantage of the rural beauty, not only of the pond, but of the surrounding rolling topography." They express a concern that the tower would be "clearly visible from almost every window" of their home and would defeat their expectation of being "insulated from any commercial activity" by the rural residential zoning designation. They further contend that they are aggrieved by the decision to permit construction of the tower in that it would (1) "significantly impact the visual character and quality of [their] neighborhood," (2) would "diminish[ ] the value of [their] home," and (3) would cause microwave emissions harmful to their health.

Under G. L. c. 40A, § 17, aggrieved person status is the jurisdictional prerequisite to judicial review of a decision by a board of appeals or other special permit granting body. See *Barvenik* v. *Aldermen of Newton, supra* at 130-131; *Cohen* v. *Zoning Board of Appeals of Plymouth*, 35 Mass. App. Ct. 619, 620 (1993); *Watros* v. *Greater Lynn Mental Health and Retardation Assn., Inc., ante* 657, 664-666 (1994). The plaintiffs concede that they are not entitled to the presumptive standing accorded to "parties in interest" as that term is defined in G. L. c. 40A, § 11. *Barvenik* v. *Aldermen of Newton, supra* at 131 & n.7. However, in their opposition to the motion for summary judgment, they claim that the spe-

cial permit issued to Cellular One violates specific property rights and interests of theirs which are within the scope of concern and protection of the by-law in issue. We agree.

The unsubstantiated representations of the plaintiffs relative to diminution of property value and harmful emissions likely constitute speculative personal opinions which are factually inadequate to establish aggrieved status, even for purposes of withstanding a motion for summary judgment. *Cohen* v. *Zoning Bd. of Appeals of Plymouth, supra* at 622-623. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, post* 931 (1994). See *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555, 565-566 (1992) ("Standing . . . requires, at the summary judgment stage, a factual showing of perceptible harm").

Similarly, the plaintiffs' expressed concern with visual impact might be dismissed as aesthetic sensitivity insufficient to impart standing, see *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge,* 27 Mass. App. Ct. 491, 493 (1989), were it not for the specific provisions of the Plymouth zoning by-law. By conditioning the grant of a special permit under § 300.09 of that by-law on a finding, as was here made, that "[t]he proposed structure will not in any way detract from the visual character or quality of the neighborhood," the town of Plymouth created and defined a protected interest. Compare *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 431 (1949). For the purpose of summary judgment standing analysis, the plaintiffs have brought themselves within the legal scope of that protection by establishing the direct visual effect of the proposed tower, not only on their home, but also on the neighborhood in which both their home and the tower site are located.

Deposition testimony that the tops of existing utility poles on the east side of Route 3 are visible from the plaintiffs' home, coupled with evidence that the proposed 190-foot tower is to be located just 255 feet easterly of Route 3, supports a reasonable inference that the tower will be clearly visible from their home and sufficiently particularizes their general contention of visual impact to remove it from the

realm of speculative and generalized aesthetic concern. Moreover, the fact that the tower site and the plaintiffs' home are situated within the same zoning district and near opposite shores of Bloody Pond, places them, for summary judgment purposes, within the same "neighborhood" as that word is used in § 300.09 of the Plymouth zoning by-law and imparts standing to the plaintiffs as protected occupants of that neighborhood.

There is no necessity for us to address the plaintiffs' argument that their ownership of property within the same zoning district as the proposed tower site gives them a legitimate interest in preserving the integrity of the district. See *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 476 (1986); *Cohen* v. *Zoning Bd. of Appeals of Plymouth*, *supra* at 624 & n.5. Also, our conclusion that the plaintiffs have standing for summary judgment purposes does not preclude a contrary determination based on evidence introduced at trial that controverts the submissions now before us or establishes that the plaintiffs' property or legal rights will not be more adversely affected by the tower than by present uses or uses permitted as of right. *Barvenik* v. *Aldermen of Newton*, *supra* at 133. The judgment is vacated, and the case is remanded to the Superior Court.

*So ordered.*