Gregory P. Sweenie & others[1] *vs.* Planning Board of Groton & another.[2]

No. 06-P-456.

Middlesex. January 17, 2007. - June 29, 2007.

Present: Rapoza, C.J., Green, & Sikora, JJ.

Further appellate review granted, 449 Mass. 1112 (2007).

*Zoning,* Person aggrieved, Jurisdiction, Gasoline station. *Jurisdiction,* Zoning.

Discussion of the standards of aggrievement that confer standing to appeal in a zoning dispute pursuant to G. L. c. 40A, § 17. [480-482]

A Superior Court judge properly rejected various claims of injury by the plaintiffs in a zoning dispute where they failed to submit evidence in support of those claims. [483]

This court concluded that certain abutters in a zoning dispute had standing to challenge a town planning board's decision granting a special permit to the proprietor of a gasoline station to replace three underground storage tanks with two new ones of greater net capacity, where a town by-law required consideration of the threat to water quality posed by the activity in question, and the abutters feared that it could potentially harm their drinking water drawn from nearby wells. [483-485]

Civil action commenced in the Superior Court Department on December 31, 2003.

A motion to dismiss was heard by *S. Jane Haggerty,* J.

*Matthew C. Donahue* for the plaintiffs.

*Howard P. Speicher* (*Ann M. Sobolewski* with him) for A.L. Prime Energy Consultants.

Sikora, J. This appeal presents a question of standing under the zoning laws. The planning board of the town of Groton (board) issued a special permit to A.L. Prime Energy Consultants (A.L. Prime), the proprietor of a gasoline station, to replace three old underground storage tanks with two new ones of

_____

[1]Patrick Kenny and John W. Kane.

[2]A.L. Prime Energy Consultants.

greater net capacity. In addition, the special permit decision effectively allowed A.L. Prime to implement a plan of modernization of the station so as to shrink the size of the station house; to convert part of the reduced structure to a convenience store; to increase the number of gasoline pumps; to add a canopy; and to redirect the flow of customer vehicles through the site. The plaintiffs, an abutter to the station property and two abutters to his property (collectively, the abutters), appealed from the board's decision to the Superior Court as "person[s] aggrieved" within the meaning of G. L. c. 40A, § 17. Upon completion of discovery, A.L. Prime moved for dismissal for lack of standing of the abutters and thereby for lack of jurisdiction. By a detailed memorandum of decision, a judge of the Superior Court allowed the motion and entered judgment dismissing the complaint. The abutters have appealed. After inspection of the record, we conclude that the abutters do have standing and reverse the judgment of dismissal.

*Procedural history.* By an application of August 4, 2003, A.L. Prime requested from the board a special permit under § 218-30 of the Groton zoning by-law (by-law) for "[u]pgrade of [its] existing gasoline filling station and replacement of three (3) 5,000 gallon underground storage tanks with two (2) underground storage tanks totaling 20,000 gallons." The board issued notice of the application and of public hearings upon it to all recorded owners of property within 300 feet of the station parcel lot lines.[3] By-law § 218-30 is entitled "Water Resource Protection Overlay District." By multiple provisions it creates and regulates "districts . . . to protect, preserve and maintain the existing and potential groundwater supply and groundwater recharge areas within the known aquifers of the town." During the months of August, September, October, and November, 2003, the board conducted five public hearings upon the merits of the application. On December 4, 2003, the board voted unanimously (6 to 0) to grant the special permit.

On December 31, 2003, the abutters filed their complaint in the Superior Court. For jurisdiction they invoked G. L. c. 40A, § 17, as persons aggrieved by the grant of the special permit.

---

[3]The board caused the issuance of these notices in compliance with the requirement of G. L. c. 40A, § 11, first par.

They named as defendants both the board and A.L. Prime. A.L. Prime answered and contested the complaint.[4] At the conclusion of the discovery period, A.L. Prime moved pursuant to Mass. R.Civ.P. 12(b)(1), 365 Mass. 754 (1974), for dismissal for lack of jurisdiction. It argued that the abutters had not produced evidence or information sufficient to establish aggrievement within the meaning of G. L. c. 40A, § 17; and that such an insufficiency deprived the claims of their jurisdictional prerequisite and required dismissal. After consideration of memoranda and oral argument, the Superior Court judge allowed the motion. Judgment of dismissal entered on January 5, 2006. The abutters have timely pursued an appeal to this court.

*Factual background.* From the pleadings and from uncontested affidavit material in the Superior Court, the following facts emerge as undisputed. Since the 1940s, a gasoline station has operated at 619 Boston Road (also known as Route 119) in Groton. The station parcel consists of 27,395 square feet of land and 111 feet of frontage. It contains a building of 2,300 square feet and an island of six gasoline pumps. Below ground three 5,000 gallon single-walled gasoline tanks feed the pumps. The present building is located approximately twenty-five feet from Boston Road and the island of pumps about twenty feet from it. The station site has no established pattern or system for the flow of customer vehicles. The site is zoned B-1. An abutting property contains a barn building now used for business. The area immediately surrounding those parcels is zoned for residential use.

The three plaintiff residents occupy homes to the east side of the station parcel. Immediately east of most of the parcel boundary is a square-shaped vacant lot of about 175 feet in width, containing frontage along the Boston Road. Bordering the east side of the vacant lot are the backyard and residence of Patrick Kenny. The Kenny property does not directly abut the station parcel. The residence and backyard of Gregory Sweenie are located immediately north of the Kenny property. A corner of the Sweenie backyard directly abuts a rear corner of the station parcel. Immediately north of the Sweenie property are the residence and yard of John W. Kane. It does not abut any bound-

---

[4]The board filed an appearance, but no responsive motions or pleadings. Nor has the board filed a brief in this court.

ary of the station parcel. Kenny, Sweenie, and Kane occupy adjacent homes fronting onto Oxbow Lane. The lane empties into the Boston Road approximately 300 feet to the east of the entrance to the gasoline station.

The special permit authorizes the following pertinent changes to the station property. A.L. Prime would raze the present station building and replace it with a smaller structure of about 1,000 square feet. The new building would contain a convenience store. Its smaller size and relocation would enable an orderly traffic pattern through the site. Circulating automobiles would have greater space and visibility at the front apron and pumps. The new pattern would include a passage and parking area behind the downsized building along the eastern boundary of the parcel. A six-foot high stockade fence would run the length of the eastern boundary between the station property and the abutters. Shrubbery would buffer the interior of the fence. The number of gasoline pumps would increase from six to eight. A canopy of 2,058 square feet would overhang the front of the station area.

Most importantly, the underground tank system would change. The three single-walled 5,000 gallon tanks would come out. Two double-walled fiberglass tanks would replace them, one of 12,000 gallon and the other of 8,000 gallon capacity. The replacement tanks would employ a monitoring system for rapid detection of leakage. A sensor fluid would occupy the space between the interior and exterior hulls and report rapidly upon the loss of even small volumes of gasoline from the tanks. This technology is unavailable in single-walled tanks. It is undisputed that the new tanks would comply with Massachusetts regulations for fire prevention, spill containment, and overfill prevention. A customer could not spontaneously operate a pump. The station attendant would at all times control the flow of gasoline from the tanks through the pumps.

*Discussion.* 1. *Standards of aggrievement.* Several familiar rules of the case law define aggrievement and determine standing to appeal under G. L. c. 40A, § 17. Preliminarily it bears emphasis that Massachusetts precedent characterizes § 17 aggrievement as a jurisdictional requirement. See *Green* v. *Board of Appeals of Provincetown,* 404 Mass. 571, 574 (1989); *Watros*

v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. 106, 108-109 (1995); *Barvenik* v. *Board of Aldermen of Newton*, 33 Mass. App. Ct. 129, 131 (1992); *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. 680, 681 n.2 (2002). Consequently, A.L. Prime appropriately moved to dismiss for lack of jurisdiction under Mass.R.Civ.P. 12(b)(1). The Superior Court judge was therefore entitled to consider materials outside the pleadings (such as the voluminous affidavit recitals with exhibits and the deposition excerpts submitted to her). The boundaries of Mass.R.Civ.P. 12(b)(6) did not confine her to the pleadings and incorporated materials.[5] Nor did the final paragraph of rule 12(b) require her to convert the motion formally to one for summary judgment under Mass. R.Civ.P. 56, 365 Mass. 824 (1974), with specific notice to all parties. See the discussion of this procedural point of aggrievement motion practice in *Watros* v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. at 108-109.

An aggrievement is "some infringement of [a] legal right[]." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996). See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949). The infringement must cause an injury particular to the complainant, and not merely a concern general to the community. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999); *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989); *Nickerson* v. *Zoning Bd. of Appeals of Raynham*, 53 Mass. App. Ct. at 682-683. Courts should not define aggrievement narrowly. *Marotta* v. *Board of Appeals of Revere*, 336 Mass. 199, 204 (1957). *Marashlian*, 421 Mass. at 721. *Cummings* v. *City Council of Gloucester*, 28 Mass. App. Ct. 345, 350 (1990). The complainant's "legal right" or protectible interest will usually receive recognition if it is a concern within the scope of the zoning code. See, e.g., *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. at 430-431; *Marashlian*, 421 Mass. at 722; *Bedford* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 372, 376-377 (1988) (all addressing the loss of on-street parking as a regulated

---

[5]At one point the brief of the abutters characterizes the motion as a rule 12(b)(6) proceeding.

subject). See also *Federman* v. *Board of Appeals of Marble-head*, 35 Mass. App. Ct. 727, 732 (1994) (density and height restrictions may incidentally protect the view of a property owner); *Bertrand* v. *Board of Appeals of Bourne*, 58 Mass. App. Ct. 912 (2003) (density regulations recognize an abutter's interest against increased noise and artificial light and against loss of backyard privacy).

Any person entitled under G. L. c. 40A, § 11, to notice of a public hearing as an "interested party" enjoys a presumption of aggrievement within the meaning of G. L. c. 40A, § 17. See *Marotta* v. *Board of Appeals of Revere*, 336 Mass. at 204 (statutory notice confers the presumption of aggrievement); *Watros* v. *Greater Lynn Mental Health & Retardation Assn.*, 421 Mass. at 108; *Marashlian*, 421 Mass. at 721; *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. at 131 (referring specifically to the presumption in behalf of "abutters to abutters"). Since G. L. c. 40A, § 11, as amended by St. 1979, c. 117, mandates notice to "abutters" and "abutters to the abutters," it draws all three of our plaintiffs into the ambit of the presumption.

The presumption is rebuttable. If an opponent challenges standing with evidence, the presumption recedes and the complainant acquires the burden of proof of the jurisdictional fact of aggrievement upon "all the evidence" without benefit of the presumption. *Marotta* v. *Board of Appeals of Revere*, 336 Mass. at 204. *Marashlian*, 421 Mass. at 721. *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. at 131. The claimant's burden is to submit "credible evidence to substantiate his allegations." *Marashlian*, 421 Mass. at 721.

Two refinements of the standard of "credible evidence" have developed. First, it demands proof of more than speculative injury. *Tsagronis* v. *Board of Appeals of Wareham*, 415 Mass. 329, 335 (1993). *Marashlian*, 421 Mass. at 721. Second, it does not demand proof of the ultimate merits of the plaintiff's allegation of harm. *Marashlian*, 421 Mass. at 721. See *Denneny* v. *Zoning Bd. of Appeals of Seekonk*, 59 Mass. App. Ct. 208, 212 n.7 (2003). Under these standards we will inspect the evidence of the specific infringements alleged by the abutters.

2. *The abutters' alleged aggrievements.* The motion judge correctly rejected various claims of injury by the abutters because they had failed to submit evidence in support of those claims. (a) They submitted no evidence to substantiate their prediction of an intrusion of increased artificial light onto their properties at night. A.L. Prime submitted a verified photometric plan from a professional engineer. It concluded that no such increase would occur. (b) The abutters submitted no evidence to support their concern about a loss of privacy. A.L. Prime introduced a detailed plan of a six-foot high stockade fence along the entire length of the boundary facing the abutters' properties. (c) The abutters hypothesized an increased volume of traffic, concomitant traffic noise, and heightened risk to pedestrian safety, all as a result of the reconfiguration of the station site. A.L. Prime submitted a traffic impact study negating the predicted increase and the affidavits of an acoustical engineer computing a net reduction of noise. None of these concerns rose beyond the level of speculation.

3. *Risk to water safety by replacement of the underground storage tanks.* However, one of the abutters' claimed concerns does not require evidentiary substantiation in order to support their standing. The abutters "fear the replacement and expansion of the underground storage tanks" because those changes "could potentially harm their drinking water" drawn from nearby residential wells. They fear contamination of ground water by spillage during the replacement and by leakage thereafter. They contend in a conclusory passage that the by-law recognizes their concern.[6]

---

[6]In the abutters' brief in this court, the following paragraph appears:

"The property in question in the instant case is located in a Water Overlay Protection District. This district is regulated by the local zoning by-laws. It, therefore, falls within the scope of the zoning laws. In addition, the abutters' concerns about the potential threat to their drinking water, is exactly the type of concern that the zoning by-laws were intended to protect. The abutters have made their fears known through affidavit testimony. They need not offer expert testimony nor scientific evidence to show the potential for harm to their legal rights. The abutters, therefore, have put forth credible evidence."

In their memorandum in opposition to dismissal in the Superior Court, the

The motion judge correctly observed that the verified information submitted to her by affidavits and deposition failed to substantiate the fear of contamination. In deposition testimony abutters Sweenie and Kenny conceded the lack of any data or analysis to support their concern. By detailed affidavits the president of A.L. Prime and a consulting engineer described the superior security of the new tanks: their double, rather than single, hulls; their interstitial monitoring fluid system; an overfill prevention device; and a spill containment manhole. By the test of specific evidence the abutters had not lifted their concern about contamination above the level of speculation.

However, by-law § 218-30G(1) addresses the issuance of special permits in a water resource protection overlay district. In pertinent part it directs as follows (emphasis supplied):

> "Each application for a special permit shall be filed with the Town Clerk for transmittal to the Board of Appeals. . . . Such special permit shall be granted if the Board of Appeals determines, in conjunction with other town agencies . . . that the intent of this chapter as well as its specific criteria are met. *In making such determination, the Board of Appeals shall give consideration to* the simplicity, reliability and feasibility of the control measures proposed and *the degree of threat to water quality that would result if the control measures failed* and shall also give consideration to the recommendation of the . . . Planning Board [and other town boards concerned with public health and safety]."

This language codifies the abutters' fears. It requires con-

---

abutters made only the following glancing reference to the by-law concerning water supply protection:

> "Licensed Site Professionals are hired to assist in the removal of old storage tanks and replacement with new storage tanks. Licensed Site Professionals would not be necessary at removal sites if the potential [of leakage] did not exist. The Plaintiffs, therefore, have a legitimate fear that is not speculative in nature, but based on common sense. Mr. Sweenie, in his deposition, states 'we are in the middle of a Water Resource Protection District . . . an increase in the storage of gasoline could potentially contaminate the water, the water supply.' . . . The removal of old fuel storage tanks creates potential harm."

sideration of the degree of threat of water contamination if the safety elements of the replacement tanks were to fail or if the replacement process were defective. "Consideration" of that danger would not amount to proof of it. However, "consideration" would necessarily permit the parties exposed to the "threat to water quality" to present their evidence and argument to the local special permit granting authority and then, if necessary, to the reviewing court under G. L. c. 40A, § 17.

The most closely fitting precedent is *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685, 688-689 (1994). The specific by-law there imparted to residents within view of a proposed high-rise cellular communication tower a protected interest in their unobstructed view because it required a determination by the special permit granting authority that the tower "will not in any way detract from the visual character or quality of the neighborhood." *Id.* at 688. Here we have a similar, or probably closer, linkage between the by-law concern (the threat of water contamination) and the complainants (the gasoline station abutters employing residential wells).

*Conclusion.* Therefore, the abutters derive standing from § 218-30G(1) of the by-law.[7] Final qualifications are in order. As in *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. at 689, the recognition of the plaintiffs' standing provides no support to the evidence or ultimate merits of the plaintiffs' complaint. The determination of standing operates entirely separately from the adjudication of the claim.

Also, a jurisdictional issue is visible on the face of by-law § 218-30G(1). It appears to assign special permit authority in a water resource protection overlay district to the board of appeals and not to the planning board. We merely identify that question for the parties. It received no argument or attention on

---

[7]Significantly, counsel for the abutters cited neither § 218-30G(1) nor the *Monks* decision, *supra*, to the motion judge. See note 6, *supra*. The by-law consists of seventy-two single-spaced pages. The abutters' omissions deprived the motion judge of two critical references, one to the record and one to the law. These omissions brought practical consequences. Effective citation could have produced a different ruling in the Superior Court and could have eliminated the consumption of time, effort, and expense imposed on all parties and the courts by this appeal.

appeal. We have no view upon it. It would seem prudent to resolve it before further proceedings advance in the Superior Court.[8]

*Judgment reversed.*

---

[8]Careful consideration and appropriate use of the respective powers of the planning board and the zoning board of appeals will be necessary to prevent jurisdictional errors and further wasted litigation. We have noted, without decision or opinion, that § 218-30G(1) of the by-law appears to assign special permit authority in the water resource protection overlay district to the board of appeals. The record shows that town counsel has advised (a) that the reduction of the gasoline service station and the addition of the convenience store comprise an extension or alteration of a nonconforming use requiring a special permit from the board of appeals under by-law § 218-6E(1); and (b) that the increased size of the underground storage tanks constitutes an accessory use requiring a special permit from the planning board under "§ 218.30F and G [*sic*]." If A.L. Prime contends that § 218-30(G) *does not apply to its project*, it should present that position explicitly. Our holding is that, if § 218-30(G) does apply, it furnishes aggrievement and standing to the abutters.