NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-921

VIRGINIA C. MUSKER

vs.

ZONING BOARD OF APPEALS OF BILLERICA & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff brought suit against the Zoning Board of Appeals of Billerica (ZBA) and JR Development LLC (developer), seeking to challenge the ZBA's decision to grant dimensional variances to the developer. A Superior Court judge ordered that summary judgment enter for the defendants on the ground that the plaintiff lacked standing under G. L. c. 40A, § 17, to challenge the ZBA's decision. The plaintiff appeals, arguing that she has standing because the proposed project will harm her in three ways: by increasing water runoff to her property, by increasing population density, and by lowering the value of her property. As we conclude that the plaintiff failed to substantiate these claimed injuries with credible evidence, we affirm.

---

[1] JR Development LLC.

Background.  The following facts are undisputed.  The property that is the subject of the variances (subject property) is located in a rural residence district in Billerica.  The variances would enable the developer to divide the subject property into two buildable lots; the developer intends to construct a duplex on one lot and a single-family home on the other.  The plaintiff's property abuts the rear boundary of the subject property.

In the spring of 2019, pursuant to a building permit, the developer demolished an existing residential structure on the subject property and cleared several trees and bushes and other vegetation.  Later the same year, the developer applied for a stormwater management permit from the Board of Health of Billerica (Board of Health).  The Board of Health's peer review engineer, BETA Group, Inc. (BETA), reviewed the developer's application.  Thereafter, BETA engineer Phil Paradis stated at the public hearing that, upon review of both the application and information provided by neighborhood residents, he concluded that the developer's proposed stormwater mitigation measures would result in "no increase in peak rate of [water] runoff or volume of runoff."  Paradis explained that, although the mitigation measures would not solve the water drainage issues the neighborhood was already experiencing, the developer had "made sure that [it] . . . used [best management practices] so

2

that [the neighborhood] will not have an increase in runoff. . . . [T]he water problems will not get any worse." BETA submitted a written report to the Board of Health documenting its findings.

In November 2019 the Board of Health voted unanimously to grant the developer a stormwater management permit with conditions, which included that all construction had to be completed in accordance with the approved plans. The Board of Health found that the developer's proposal included "adequate measures to protect the public health and environment and complie[d] with the intent of Board of Health Rules and Regulations." It further found that "approval of the applicant's request will not be detrimental to the public health and environment."

In February 2020 the ZBA opened a public hearing on the developer's application for the variances. In connection with that application, the Board of Health provided the following written comments to the ZBA:

> "The applicant has obtained a Stormwater Management Permit for the proposed development of two (2) separate dwellings at this site. This project was reviewed by BETA Group, the Board of Health's Consulting Engineer for compliance with the Board of Health's Stormwater Management Regulations. It has been determined that the actions proposed by the applicant are more than adequate measures to protect public health and the environment and complies with Board of Health Rules and Regulations. In particular, stormwater runoff to abutting properties will be reduced by sixty percent (60%)."

3

In July 2020 the ZBA voted unanimously, over the objections of the plaintiff and other abutters, to grant the variances. Citing the Board of Health's comments, the ZBA found that "the construction of a retention area as approved by the Board of Health would help control water" and that "the storm water management plan is a factor that will allow for the requested relief to be granted."  It also found that "the existing lot is over [three] acres[,] which allows for two lots each well over the required 50,000 square foot minimum required for the zone[,] therefore not substantially derogating from the intent or purpose of this Zoning By-Law."

The plaintiff then initiated the underlying action, in which she later moved for summary judgment.  The developer filed a cross-motion, arguing that the plaintiff was not a "person aggrieved" under G. L. c. 40A, § 17, and thus lacked standing to appeal the ZBA's decision.  The judge held a hearing on both motions, after which he denied the plaintiff's motion, allowed the developer's cross-motion, and ordered that judgment enter for the defendants.

Discussion.  Under G. L. c. 40A, § 17, "only a 'person aggrieved' has standing to challenge a decision of a zoning board of appeals."  81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012).  Abutters enjoy "a

4

rebuttable presumption" that they are persons "aggrieved." Id. To rebut the presumption, the defendant must "offer[] evidence 'warranting a finding contrary to the presumed fact.'" Id., quoting Marinelli v. Board of Appeals of Stoughton, 440 Mass. 255, 258 (2003). The defendant can meet this burden at the summary judgment stage "by coming forward with credible affirmative evidence that refutes the presumption," such as "affidavits of experts establishing that an abutter's allegations of harm are unfounded or de minimis." 81 Spooner Rd., LLC, supra at 702. The defendant can also meet its burden by referencing materials in the summary judgment record, "unmet by countervailing materials," which demonstrate that the plaintiff "has no reasonable expectation of proving a legally cognizable injury" (quotations and citation omitted). Id. at 703.

If the defendant rebuts the presumption, "the plaintiff must prove standing by putting forth credible evidence to substantiate the allegations" of harm. 81 Spooner Rd., LLC, 461 Mass. at 701. Evidence is credible if it "provide[s] specific factual support for each of the claims of particularized injury" and is "of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action." Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 215 (2020), quoting Butler v. Waltham,

5

63 Mass. App. Ct. 435, 441 (2005).  "Neither conjecture nor speculative personal opinion substitutes for proof."  Murchison, supra.

Because the judge resolved the question of standing on summary judgment, our review is de novo.  See 81 Spooner Rd., LLC, 461 Mass. at 699.  We view the record in the light most favorable to the plaintiff, the party against whom judgment entered.  See id.

1.  Water runoff.  The plaintiff's primary claim of injury is that the proposed project will increase water runoff to her property, raising the risk of flooding and drainage issues.  According to the plaintiff, the developer failed to offer sufficient evidence to rebut this claim and so her standing must be presumed unless disproven at trial.  Alternatively, the plaintiff argues that, even without the benefit of the presumption, she offered credible evidence to substantiate her claim.  Neither argument persuades us.

The materials relied on by the developer were adequate to rebut the presumption of standing.  In support of summary judgment, the developer submitted an affidavit from John Noonan -- a civil engineer and land surveyor who worked on the proposed project -- which described the steps the developer took to obtain a stormwater management permit from the Board of Health.  Noonan explained that, to obtain the permit, the developer was

6

required to submit a watershed analysis that "allow[ed] for a full understanding of the amount of stormwater flow that enters the property and how best to treat, mitigate and allow for the continued stormwater flow with no impact to the downstream watershed."  BETA then reviewed the application to ensure that the site design met "the performance standards of the Stormwater Management Regulations."  In Noonan's opinion, "to a high degree of certainty," the approved site design, "which represents the work product of the [developer's] civil engineer, the [t]own's civil engineer, and the [t]own's peer review engineer, provides more than adequate protection from 'flooding,' 'poor drainage,' and 'overflows' to all of the abutters, including [the plaintiff]."

Noonan's affidavit, which was uncontroverted, was sufficient to show that the plaintiff's claimed injury was unfounded or de minimis.  See Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 35 (2006) ("through unchallenged affidavits of its experts, the developer established that the plaintiff's claims of traffic and drainage problems were unfounded").  The plaintiff argues otherwise, on the basis that Noonan is "not disinterested" and so could be found not credible if the case goes to trial.  To survive summary judgment, however, a nonmoving party must do more than "simply state" that the moving party's witness was "interested"

7

and "thus his testimony could be disregarded." Adams v. Schneider Electric USA, 492 Mass. 271, 289 (2023). The nonmoving party must instead "identify specific material in the record" controverting the moving party's evidence. Id. Not only did the plaintiff fail to do so here, there are uncontroverted materials in the record that support Noonan's conclusions, including the BETA report, Paradis's comments to the Board of Health, and the Board of Health's ultimate decision to grant the stormwater management permit.

Thus, because the developer rebutted the presumption of standing, the burden was on the plaintiff to substantiate her claim with credible evidence. In this regard the plaintiff offered her own declaration, declarations from her neighbors, and photographs of her property, all to show that the water runoff to her property increased after the developer demolished the existing structure on the subject property in 2019. These materials, however, do not bear on whether "the claimed injury likely will flow from the [ZBA's] action," that is, the ZBA's decision to grant the variances. Murchison, 485 Mass. at 215, quoting Butler, 63 Mass. App. Ct. at 441. The developer demolished the existing structure, pursuant to the building permit, before the start of the ZBA proceedings. Any water impacts caused by the demolition are therefore not the proper focus in assessing whether the plaintiff has standing to

8

challenge the ZBA's decision; the relevant question, rather, is whether there is credible evidence that the proposed project, as reviewed and approved by the ZBA, will increase water runoff to the plaintiff's property.  See Murchison, supra at 217-218 (judge properly credited defense expert's testimony concerning water runoff over that of plaintiffs' expert, where subject property "already ha[d] been partially cleared," and plaintiffs' expert conducted comparison only between property "in a natural state and a developed state" while defense expert "compared natural, cleared, and developed states").  Although the plaintiff is correct that credible evidence in this context is not limited to expert testimony, see Krafchuk v. Planning Bd. of Ipswich, 453 Mass. 517, 524-525 (2009), she offered no evidence, expert or otherwise, to refute the developer's evidence that the mitigation measures included in the proposed project will result in no increase in water runoff to neighboring properties, including the plaintiff's.

We disagree with the plaintiff's contention that the mitigation measures should be disregarded when assessing standing and that the analysis should instead proceed on the "assum[ption] that the [d]eveloper [will] fail[] to implement (and maintain)" the mitigation measures.  The case on which the plaintiff relies, Jepson v. Zoning Bd. of Appeals of Ipswich,

450 Mass. 81 (2007), does not support her position.[2] In Jepson,
the ZBA had granted a comprehensive permit under G. L. c. 40B
with conditions relating to drainage and stormwater management,
including that the order of conditions issued by the local
conservation commission be made part of the comprehensive
permit. See id. at 85. The court held that the plaintiff had
standing to challenge the comprehensive permit because he
presented credible evidence that the project would increase
flooding to his property despite the conditions imposed by the
ZBA. See id. at 91-92.[3] In contrast here, the plaintiff put
forth no such evidence and has thus failed to substantiate her
claim of injury. See Murchison, 485 Mass. at 217 (abutters did
not establish standing based on harm from water runoff or
flooding, where they failed to counter defense expert's
testimony that any water runoff after completion of project,
which included "various mitigation measures," would be no
greater than runoff from property in undeveloped state).

---

[2] The other case cited by the plaintiff, Sweenie v. Planning Bd.
of Groton, 69 Mass. App. Ct. 477 (2007), was overturned by the
Supreme Judicial Court on further appellate review. See Sweenie
v. A.L. Prime Energy Consultants, 451 Mass. 539 (2008).
[3] Specifically, the plaintiff presented documents from the
conservation commission discussing the existence and effect of
beaver dams constructed after the grant of the comprehensive
permit. See Jepson, 450 Mass. at 91. The documents stated that
the beaver dams had raised the water elevation on the
plaintiff's property, which "necessarily ha[d] an impact on the
project's storm water detention function" such that a "redesign
. . . [was] in order." Id. at 92.

2. _Population density_.  The plaintiff next argues that she will be harmed by the proposed project because it will increase population density and, as a result, the risk of fire.  Even assuming that fire safety is an interest protected by the zoning bylaw,[4] we agree with the judge that the plaintiff's concerns are speculative and do not confer standing.

Noonan averred in his affidavit, and the plaintiff did not dispute, that the distance from the closest part of the proposed new buildings to the plaintiff's property line is 199.1 feet, and the distance to the plaintiff's home is 310 feet, well within the setback requirements of the zoning bylaw.  This was sufficient to rebut the presumption of standing.  See 81 Spooner Rd., LLC, 461 Mass. at 702.  In response the plaintiff asserted, without any supporting evidence, that the risk of fire will "increase[] exponentially" because the new buildings will be larger and closer to the plaintiff's property line than the original structure.  This assertion constitutes "speculative personal opinion," which is not credible evidence substantiating the claimed injury.  Murchison, 485 Mass. at 215.  See Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 121 (2011)

---

[4] The judge concluded that fire safety is an issue that "should be pursued under local and state building codes and procedures."  The plaintiff does not directly address this ruling.

11

("Aggrievement requires a showing of more than minimal or slightly appreciable harm").[5]

3. _Diminution in property value_. Finally, the plaintiff contends that "the value of her property will diminish based on the increased risk of flooding, drainage and excess water collection" caused by the proposed project. As we have explained, the plaintiff failed to substantiate her claim that the proposed buildings, as opposed to the demolition of the prior building, will increase water runoff to her property. For at least this reason, the plaintiff likewise failed to prove

---

[5] We need not address the plaintiff's argument, raised for the first time in her reply brief, that the new building will infringe on her "privacy, peace and quiet." See Commonwealth v. Stewart, 460 Mass. 817, 831 (2011) (argument raised for first time in reply brief is waived). We note that, in any event, the plaintiff offered only speculative assertions and no credible evidence in support of her claims of density-related harm. See Murchison, 485 Mass. at 215 (judge properly found that abutter's "testimony that he expect[ed] an increase in lighting, traffic and noise as a result of a new house being built across the street on a three-acre lot" was speculative and insufficient to prove aggrievement).

aggrievement based on diminution in the value of her property. Cf. Murchison, 485 Mass. at 215-217.

Judgment affirmed.

By the Court (Wolohojian, Shin & Ditkoff, JJ.[6]),

_Joseph F. Stanton_

Clerk

Entered: October 31, 2023.

---

[6] The panelists are listed in order of seniority.