NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-277

DIANA GERTSCH & others[1]

vs.

TOWERNORTH DEVELOPMENT, LLC, & others[2] (and a consolidated case[3]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

These cases arise from decisions by the planning board of Essex and the zoning board of appeals of Essex to grant a special permit and four variances to TowerNorth Development, LLC (TowerNorth). The plaintiffs challenged the grants under G. L. c. 40A, in Superior Court actions that were consolidated. TowerNorth then moved for summary judgment, citing lack of standing. A judge allowed the motion, reasoning that the presumption of aggrievement was overcome but the plaintiffs did

_____

[1] William L. Lahey and Brett Prince.

[2] John E. Coughlin and the zoning board of appeals of Essex.

[3] Gertsch & others vs. TowerNorth Development, LLC, & another.

not respond with evidence showing a triable issue whether they would suffer legally cognizable harm -- an essential element of their case.  See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700-703 (2012); Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  The plaintiffs appealed from the judgments dismissing their amended complaints and claim that the record reveals factual disputes.  Reviewing the judge's decision de novo, 81 Spooner Rd., LLC, supra at 699, we affirm.

Background.  The following material facts are undisputed. John Coughlin owns land along Eastern Avenue in Essex (also known as route 133) that is zoned commercial[4] and consists of two parcels.  One parcel has 3.04 acres and provides access to route 133, and the other parcel has 22.3 acres and contains a self-storage facility but is otherwise heavily wooded.  TowerNorth is a developer of wireless infrastructure that proposes to build a 146-foot cell tower on about 2,647 square feet of ground space in the back of Coughlin's woods.

Under the town's zoning bylaws, cell towers require a special permit, see § 6-3.4.2(e), but "shall be permitted subject to the . . . requirements" of § 6-3.4.5.  TowerNorth's

---

[4] While the plaintiffs dispute in their brief that the land is zoned commercial, they responded, "Uncontroverted," to TowerNorth's statement of undisputed fact that, "The proposed location is . . . zoned commercial business."

2

proposal meets most of the applicable requirements. "Only freestanding monopole towers . . . shall be allowed," § 6-3.4.5(b), which this would be. The tower would be in an established wooded area, as § 6-3.4.5(j) requires "[w]here feasible," and it would not "exceed one hundred fifty (150) feet in height," as § 6-3.4.5(d) requires. There would be no lighting other than covered safety lights at the base for bimonthly visits from maintenance workers. See § 6-3.4.5(i) ("Lighting shall be limited to that needed for maintenance and emergencies"). The base would be surrounded by a chain link fence six feet high, topped with barbed wire and locked by a gate twelve feet wide.

The tower would only be 1.7 miles from another tower, however, where two miles are required by § 6-3.4.5(c). Also, the nearest property line setback would be only 121 feet. Under § 6-3.4.5(e), "a distance equal to at least one hundred twenty-five (125) percent of the height of the Tower" -- or 187.5 feet for a 150-foot tower -- is required. In addition, the tower would be 379 feet from the nearest residence, even though 500 feet are required by § 6-3.4.5(g), and it would have storage cabinets at its base that would not be connected by a common wall, which "accessory buildings" must be under § 6-3.4.5(h).

TowerNorth therefore sought four variances and supported the application with (among other things) an environmental sound

assessment showing that noise from the tower's equipment would not exceed the level of "moderate rainfall on foliage"; a radio frequency exposure report concluding that maximum exposure levels from the tower would be less than two percent of Federal limits; photographs of a balloon simulating the tower height that were taken from fifteen locations around the proposed site; and a real estate valuation report opining that the tower would have no measurable impact on surrounding property values due to proximity or visibility.  A company called Isotrope Wireless (Isotrope) also prepared a report on the application, in which it expressed concern about the focal length of the camera used to take the balloon test photos.  Isotrope also reported that the "typical appraiser's methods" of assessing the financial impact of cell towers has not historically been helpful for lack of objective data, but in "hundreds of cell tower proceedings," Isotrope had "not seen evidence of rampant property value deflation."

The plaintiffs are abutting landowners who oppose the tower.  William L. Lahey's primary concern is the daytime "visual impact" on his farm across route 133.  Ancillary concerns are lights on the tower, which Lahey assumes there are but does not "know for sure," and traffic from construction and maintenance workers, although Lahey does not know what maintenance will be required or how many trips it will entail.

4

Diana Gertsch has property next to Coughlin's woods and a "personal interest in the aesthetics of how this would look on the landscape, the actual wildlife and environmental impact this would have, how this may affect our property value and even potential health and wellness of being so close to a cell tower." Gertsch's concerns about potential health risks are based on her experiences as a nurse, while her views on environmental and property value impacts are based on personal feeling and belief. From his land on the other side of Coughlin's woods, Brett Prince also has concerns about health effects, based on unspecified "data" from "the scientific community." Just like Lahey, Prince worries about traffic but does not know what tower maintenance will entail; just like Gertsch, he is concerned about property values and "the aesthetics of having a cell tower that close to our house" but has no numbers to substantiate the concerns.

The plaintiffs offered their own balloon test photos in opposition to the motion for summary judgment, along with the affidavit of expert real estate appraiser Morgan Fennell. Fennell (1) visited "the properties that are the subject of this report," though no report is attached to the affidavit; (2) identified a "similar" housing market somewhere "on the Milton-Quincy border near an 80 foot monopole"; and (3) examined an unknown number of "transactions in proximity to th[at]

5

tower," of a nature not described.  Fennell then applied three analytical models to figures not set forth in the affidavit and found that "[u]nder . . . decreasing market conditions, all three of the appraisal analyses resulted in a significant, discernible negative impact on the Plaintiffs' properties from the proposed tower."

Discussion.  In resolving this appeal, we assume without deciding that the zoning bylaws explicitly protect the plaintiffs' interests in light and aesthetics (lighting for emergencies and maintenance only; towers should be in established woods where feasible), and that they implicitly protect against the following harms asserted by the plaintiffs: "diminished property value[s], health effects on young children, . . . noise, and traffic.  See Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 31-32 (2006).  Nevertheless, on this record, we agree with the judge that the plaintiffs failed to adduce direct facts supporting an inference that any infringement on those interests would be more than de minimis and would be "special and different from the concerns of the rest of the community."  Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 215 (2020), quoting 81 Spooner Rd., LLC, 461 Mass. at 701.  See Standerwick, supra at 33.

To begin, the plaintiffs did not describe in detail what the visual impact of a tower in a wooded area would be or say

6

how it would be different from that felt by others, unlike the parties in cases on which the plaintiffs rely. See Martin v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, 434 Mass. 141, 146-147 (2001) (plaintiff testified that towering steeple would be visible day and night, when lit, from most if not all of her property); Aiello v. Planning Bd. of Braintree, 91 Mass. App. Ct. 354, 365 (2017) ("Aiello will be able to see the many pieces of equipment stored and oversized vehicles parked outside from many points on his property"); Monks v. Zoning Bd. of Appeals of Plymouth, 37 Mass. App. Ct. 685, 688 (1994) ("tower would be 'clearly visible from almost every window' of their home").

In addition, the plaintiffs all spoke in generalities. See Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 575 (2016) (plaintiff's "opinion that a building would block access to the pond" was conjecture where "unsupported by any specific construction plans or other evidence"). And, the gaps were not filled by the Isotrope report, the plaintiffs' balloon photos, or Fennell's affidavi, as none of those contain underlying data or indeed any figures at all notwithstanding that Fennell found a "discernible" impact. Simply put, the plaintiffs' materials "constitute speculative personal opinions which are factually inadequate to establish aggrieved status,

7

even for purposes of withstanding a motion for summary judgment." Monks, supra.

The plaintiffs rely heavily on the fact that the tower would violate § 6-3.4.5's setback requirements, and they point to other cases where dimensional variances gave rise to standing, but those cases all involved more than de minimis harm. See Aiello, 91 Mass. App. Ct. at 362-366; Sheppard v. Zoning Bd. of Appeals of Boston, 74 Mass. App. Ct. 8, 11-13 (2009); Schiffenhaus v. Kline, 79 Mass. App. Ct. 600, 602 (2011). See also Marhefka v. Zoning Bd. of Appeals of Sutton, 79 Mass. App. Ct. 515, 521 (2011) (genuine issues of material fact whether harm was de minimis). Accordingly, the cases are

inapposite, and we agree with the judge's conclusion to enter summary judgment for lack of standing.[5]

                          <u>Judgments affirmed</u>.

                          By the Court (Desmond, Ditkoff & Englander, JJ.[6]),

                          Clerk

Entered: July 16, 2025.

---

[5] Given our conclusion, to the extent the parties raise any other arguments about the underlying decisions, we need not address those arguments.

[6] The panelists are listed in order of seniority.

9