GREGORY P. SWEENIE & others[1] *vs.* A.L. PRIME ENERGY
CONSULTANTS.

Middlesex. April 7, 2008. - May 28, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Zoning,* Person aggrieved, By-law, Special permit, Gasoline station. *Practice, Civil,* Zoning appeal, Standing. *Zoning,* Parties.

A Superior Court judge properly dismissed a civil action brought by the
    plaintiffs, abutters to a certain gasoline station, challenging the issuance by
    the town planning board (board) of a special permit authorizing, inter alia,
    the removal of the gasoline station's underground storage tanks, where the
    plaintiffs — who speculated that the permitting decision would adversely
    affect the quality of their drinking water — lacked standing, in that they
    produced no credible evidence to bring themselves within the legal scope
    of the protected interest created by a bylaw requiring the board to give
    consideration to the potential threat to water quality that would result if the
    safety elements of the gasoline storage tanks failed. [543-546]

CIVIL ACTION commenced in the Superior Court Department on
December 31, 2003.

A motion to dismiss was heard by *S. Jane Haggerty,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Howard P. Speicher* for the defendant.

*Matthew C. Donahue (Joseph W. Jussaume* with him) for the
plaintiffs.

*Martin R. Healy & Michael K. Murray,* for Massachusetts
Chapter of the National Association of Industrial and Office
Properties, amicus curiae, submitted a brief.

MARSHALL, C.J. We revisit in this case the issue of standing to
challenge a decision under the zoning laws. In 2003, the plan-
ning board of the town of Groton (planning board) issued a
special permit to the defendant, A.L. Prime Energy Consultants
(A.L. Prime), pursuant to § 218-30 (G) (1) of the town zoning

[1] Patrick Kenny and John W. Kane.

bylaw (bylaw).[2] The permit authorized A.L. Prime to improve and modernize a gasoline station that it operates in Groton. The plaintiffs, abutters or abutters to the abutters to the gasoline station, appealed from the decision to the Superior Court, claiming they were "aggrieved" by the planning board's decision. G. L. c. 40A, § 17.[3] A judge in the Superior Court allowed A.L. Prime's motion to dismiss, ruling that the plaintiffs lacked standing to challenge the issuance of the special permit because they had failed to put forth credible evidence that they were "aggrieved."[4]

The Appeals Court reversed, concluding that the plaintiffs could "derive standing" on one of their claims from the language of the bylaw itself. *Sweenie* v. *Planning Bd. of Groton*, 69 Mass. App. Ct. 477, 484-485 (2007). We granted A.L. Prime's application for further appellate review. We affirm the decision of the Superior Court.[5]

---

[2]Section 218-30 of the Groton zoning bylaw (bylaw), titled "Water Resource Protection Overlay District," creates and regulates "districts . . . to protect, preserve and maintain the existing and potential groundwater supply and groundwater recharge areas within the known aquifers of the town." The bylaw provides, in relevant part:

"G. Procedures for issuance of special permit.

"(1) Each application for a special permit shall be filed with the Town Clerk for transmittal to the Board of Appeals . . . . Such special permit shall be granted if the Board of Appeals determines, in conjunction with other town agencies . . . that the intent of this chapter as well as its specific criteria are met. In making such determination, the Board of Appeals shall give consideration to the simplicity, reliability and feasibility of the control measures proposed and the degree of threat to water quality that would result if the control measures failed and shall also give consideration to the recommendations of the . . . Planning Board . . . ."

[3]General Laws c. 40A, § 17, provides, in relevant part: "Any person aggrieved by a decision of the board of appeals or any special permit granting authority . . . whether or not previously a party to the proceeding . . . may appeal to the . . . superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk."

[4]The planning board of Groton (planning board) filed an appearance in the Superior Court, but did not otherwise participate in the proceedings in that court, the Appeals Court, see *Sweenie* v. *Planning Bd. of Groton*, 69 Mass. App. Ct. 477, 479 n.4 (2007), or this court.

[5]We acknowledge the amicus brief of the Massachusetts Chapter of the

1. *Background.* As described more fully by the Appeals Court, *Sweenie* v. *Planning Bd. of Groton, supra* at 479-480, A.L. Prime now operates a gasoline station that has been located on the site in Groton since the 1940's. In August, 2003, A.L. Prime applied for a special permit for the "[u]pgrade of [the] existing gasoline filling station and replacement of three (3) 5,000 gallon underground storage tanks with two (2) underground storage tanks totaling 20,000 gallons." After conducting five public hearings,[6] at each of which at least one of the plaintiffs expressed opposition to the issuance of a special permit, in December, 2003, the planning board voted unanimously to grant a special permit to A.L. Prime. The permit authorizes the replacement of three old, single-walled gasoline storage tanks with two larger, double-walled tanks that would be capable of rapid detection of any leaks, and would comply with all Massachusetts regulations for fire prevention, spill containment, and overfill prevention. *Id.* at 480. The special permit also permits A.L. Prime to raze the existing gasoline station building, replacing it with a smaller structure containing a convenience store. A six-foot high stockade fence, buffered by shrubbery, would separate the parcel from abutters.

In their appeal to the Superior Court the plaintiffs alleged, among other things, that the removal of the existing storage tanks could potentially harm their drinking water, which comes from nearby residential wells.[7] In response to discovery propounded by A.L. Prime,[8] the plaintiffs asserted that the

National Association of Industrial and Office Properties filed in support of A.L. Prime's position.

[6]General Laws c. 40A, § 11, requires a permit granting authority to give notice, where required, to all "[p]arties in interest," which includes the "petitioner, abutters, . . . and abutters to the abutters within three hundred feet of the property line of the petitioner."

[7]The plaintiffs alleged that the decision of the planning board was not consistent with relevant laws or regulations, and that the planning board had exceeded its authority because (1) the gasoline station site was in "an area having a significant water resource protected under [the bylaw]"; (2) the planning board had failed to consider and consult the Groton zoning board of appeals about whether the "extension or alteration complies with the non-conforming use" and whether it would be "substantially more detrimental" than the existing nonconforming use; and (3) the planning board mistakenly identified the storage tanks as an "accessory use" rather than a "primary use."

[8]The discovery included interrogatories and the depositions of the three plaintiffs.

changes to the existing gasoline station would cause a threat of contamination of their drinking water caused by gasoline spillage during replacement and expansion of the underground storage tanks; an increase in artificial light on their properties at night; a decrease in their privacy; and an increase in traffic and related safety and noise concerns.

In June, 2005, A.L. Prime moved to dismiss for lack of jurisdiction, Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974),[9] supported by affidavits and exhibits addressing each of the plaintiffs' claimed adverse impacts. These included an affidavit from the president of A.L. Prime describing the new storage tanks, including their double-walled construction and leak detective systems; a "tank plan" prepared by a professional engineer, which indicates that the "underground tank installation shall comply with all applicable regulations, all requirements of Federal, State, and local codes"[10]; a "lighting plan" prepared by the same engineer, which demonstrates that no light will pass further from the site than forty feet onto a vacant lot that abuts the station; a traffic impact study from the same engineer concluding that there would be no increase in traffic; and an affidavit from an acoustical engineer to the effect that the proposed improvements would cause no increase in audible noise at the plaintiffs' residences and would likely reduce the noise level. The plaintiffs opposed the motion to dismiss, but filed no affidavits or other materials either contesting the expert opinions and affidavits of A.L. Prime or supporting their own claims. In January, 2006, a judge in the Superior Court allowed A.L. Prime's motion, concluding that the "concerns" were "purely speculative" and that the plaintiffs had failed to put forth credible evidence to support any of their claims. The plaintiffs appealed.

The Appeals Court agreed, noting that the plaintiffs' "concerns" did not rise "beyond the level of speculation." *Sweenie* v. *Planning Bd. of Groton, supra* at 483. The court nonetheless

---

[9]As the Appeals Court noted,· "aggrievement" for purposes of pursuing an appeal under G. L. c. 40A, § 17, is a jurisdictional requirement. *Sweenie* v. *Planning Bd. of Groton, supra* at 480-481. See *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571, 574 (1989).

[10]Federal and State regulations govern the design and installation of underground fuel storage tanks. See, e.g., 40 C.F.R. Parts 281 and 282 (2007); 527 Code Mass. Regs. § 9.05 (2006).

determined that the plaintiffs had standing to pursue one of their claims — their claim that the replacement and expansion of the underground storage tanks could potentially harm their drinking water — reasoning that the water contamination claim did not "require evidentiary substantiation in order to support their standing." *Id.* In the view of the Appeals Court, the language of the bylaw "codifies the abutters' fears," from which the plaintiffs could derive standing. *Id.* at 484.

2. *Discussion.* Under G. L. c. 40A, § 17, only a "person aggrieved" by a decision of a permitting authority has standing to appeal from the decision to the Superior Court. See note 9, *supra.* A "person aggrieved" is one who "suffers some infringement of his legal rights." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996), quoting *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949). The injury must be more than speculative, and plaintiffs "must put forth credible evidence to substantiate claims of injury to their legal rights." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, *supra* at 723.[11]

The bylaw at issue provides that where a special permit is sought for a site in a water resource protection overlay district, the planning board "shall give consideration to . . . the degree of threat to water quality that would result if the control measures failed." See note 2, *supra.* The Appeals Court concluded that this required consideration of the degree of threat "necessarily" permits parties such as the plaintiffs who allege that they would be exposed to the threat of water contamination to challenge the planning board's decision in court. *Sweenie* v. *Planning Bd. of Groton*, 69 Mass. App. Ct. 477, 485 (2007). In

[11]The plaintiffs were entitled to a presumption of aggrievement. *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 33-35 (2006), quoting *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258 (2003). The presumption is rebuttable. Where, as here, the defendant has challenged the plaintiffs' standing with evidence "warranting a finding contrary to the presumed fact," *Standerwick* v. *Zoning Bd. of Appeals of Andover*, *supra* at 34, the question of standing is decided on the evidence "with no benefit to the plaintiff from the presumption." *Id.* at 33, quoting *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 130-132 (1992). The plaintiffs do not contest that the presumption has receded, or that they now have the burden to produce credible evidence to substantiate their claims. *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996).

support of its holding, the Appeals Court pointed to *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685 (1994) (*Monks*), deeming that case the "most closely fitting precedent." *Sweenie* v. *Planning Bd. of Groton, supra.*[12] The cases are different, however, in one crucial respect. *Monks* involved the potential adverse impact of a proposed cellular telephone tower on the plaintiffs' view from their home. The relevant bylaw under which the cellular telephone company obtained a permit to construct the tower conditioned the grant on a finding by the board of appeals that the proposed structure would not detract from the visual character or quality of the neighborhood. See *Monks, supra* at 688. While aesthetic or visual impacts generally are not cognizable injuries under zoning regulations, *Martin* v. *Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, 434 Mass. 141, 146-147 (2001), the Appeals Court held in *Monks* that, by conditioning the grant of the special permit on such a finding, the town had "created and defined a protected interest." *Monks, supra.* The *Monks* court then reviewed the summary judgment record[13] and determined that those plaintiffs had "brought themselves within the legal scope of that protection by establishing the direct visual effect of the proposed tower" by presenting credible evidence to substantiate their claims of injury. *Id.*

Even if the bylaw under which the planning board granted A.L. Prime's special permit "created and defined a protected interest," *Monks, supra* at 688 — by requiring the planning board to give consideration to the potential threat to water quality that would result if the safety elements of the gasoline stor-

---

[12]The argument that the bylaw itself confers standing on the plaintiffs to pursue their water contamination claim was not raised in the Superior Court or the Appeals Court. The plaintiffs cited neither the relevant section of the bylaw nor *Monks* v. *Zoning Bd. of Appeals of Plymouth*, 37 Mass. App. Ct. 685 (1994) (*Monks*), in either court. See *Sweenie* v. *Planning Bd. of Groton*, 69 Mass. App. Ct. 477, 485 n.7 (2007).

[13]The plaintiffs in *Monks* offered evidence that they had situated their house overlooking a pond "to take maximum advantage of the rural beauty, not only of the pond, but of the surrounding rolling topography." *Monks, supra* at 687. The proposed cellular tower would be "clearly visible from almost every window" of their home, and would "significantly impact the visual character and quality" of their neighborhood. *Id.* When constructed, the tower would defeat the plaintiffs' expectation of being "insulated from any commercial activity" in the rural residential zone. *Id.*

age tanks fail — this alone is not a sufficient basis on which to confer standing. In *Monks* the plaintiffs established the link between the bylaw and themselves by producing evidence of the actual visible impact on their property. Here, the plaintiffs produced no credible evidence to bring themselves within the legal scope of the protected interest created by the bylaw. They bear the burden, see note 11, *supra*, of substantiating their claims regarding any potential threat to the quality of their drinking water in order to bring *themselves* within the legal scope of that interest. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 30 (2006) (referring to "our long-standing jurisprudence that standing to challenge a zoning decision is conferred only on those who can plausibly demonstrate that a proposed project will injure their own personal legal interests *and* that the injury is to a specific interest that the applicable zoning statute, ordinance, or bylaw at issue is intended to protect" [emphasis in original]); *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 723.

The language of a bylaw cannot be sufficient in itself to confer standing: the creation of a protected interest (by statute, ordinance, bylaw, or otherwise) cannot be conflated with the additional, individualized requirements that establish standing. To conclude that a plaintiff can derive standing to challenge the issuance of a special permit from the language of a relevant bylaw, without more, eliminates the requirement that a plaintiff "plausibly demonstrate" a cognizable interest in order to establish that he is "aggrieved." *Standerwick* v. *Zoning Bd. of Appeals of Andover, supra* at 30.

In this case, the judge found that the plaintiffs had not done so, concluding that the plaintiffs' "fears are purely speculative and not in accordance with the standing requirements." On our own review of the record,[14] we conclude that the judge's finding that the plaintiffs' claims are speculative and that the plaintiffs

[14]One plaintiff testified at his deposition that "all the homes in the general area use well water . . . . [A]ny increase in the storage of gasoline could potentially contaminate . . . the water supply." A second testified: "[T]here could be spillage occurring during the removal or the installation of the new tanks." When asked whether he knew that there was a "state-regulated procedure for the removal and replacement of underground fuel storage tanks," he replied, "I would assume there would be." The witness acknowledged that

offered no credible evidence to substantiate their claim that the permitting decision would adversely affect the quality of their groundwater was not clearly erroneous.[15] See *Marashlian* v. *Zoning Bd. of Appeals of Newburyport, supra* at 721-722. See also *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 441 (2005) (evidence must both provide "specific factual support for each of the claims of particularized injury the plaintiff has made" and "be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action. Conjecture, personal opinion, and hypothesis are therefore insufficient"). The judgment of dismissal was properly entered. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 553-554 (1999) (abutter who failed to offer evidence of plausible claim did not have standing for purposes of G. L. c. 40B, § 21).[16]

*Judgment affirmed.*

---

he had "no reason to believe that the procedure would not be followed," but stated that "accidents happen." When later asked whether he had any reason to believe that there would be a breach of the new storage tanks, the plaintiff replied, "I have no reason to believe, but I have no reason to think that it couldn't happen, either." The third plaintiff testified: "The replacement of the tanks, if done correctly, should not impact me."

[15]The plaintiffs' other claims — that the new additions to the gasoline station would cast more artificial light onto their properties at night; that they would lose privacy; and that there would be increased vehicle traffic and noise in the area — were not a subject of the application for further appellate review. We have nevertheless considered them. See *Commonwealth* v. *Lombard*, 419 Mass. 585, 593 (1995) ("Unless otherwise specified by order of this court, when an application for further appellate review is allowed, all issues presented to the Appeals Court and argued adequately in the briefs filed with this court . . . are before this court" [citation omitted]). We agree with the reasoning of the judge in the Superior Court and with the Appeals Court that, here too, the plaintiffs failed to put forth credible evidence on these claims.

[16]A.L. Prime challenges the adequacy of the plaintiffs' brief. Our consideration of the plaintiffs' arguments was impeded by the failure in their brief to make appropriate references in the statement of facts to pages of the record, see Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979), and to support all contentions with "citations to the authorities, statutes and parts of the record relied on," Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).