THOMAS vs. MCLEOD, MISC 21-000263

































 
 ROBERT MONTGOMERY THOMAS, Plaintiff, v. RICHARD MCLEOD; EDWARD FOLEY; JONATHAN MORIARTY; BRANDON DIEM; AND KEMAL DENIZKURT as appointed members of the Town of Weymouth Zoning Board of Appeals, and ROBERT J. LUONGO, as the Town of Weymouth appointed Planning Director, and ERIC SCHNEIDER, as the Town of Weymouth appointed Principal Planner, and KENNETH L. DIFAZIO, Esq., as (plaintiff's) District 3 elected Town Councilor, and ROBERT L. HEDLUND, JR., in his official capacity as Mayor & appointing authority of the Town of Weymouth, Massachusetts, and TRINITY GREEN DEVELOPMENT, LLC, Defendants
 MISC 21-000263 
 AUGUST 2, 2021
NORFOLK, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER GRANTING THE MUNICIPAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND THE PRIVATE DEFENDANT'S MOTION TO DISMISS BASED ON PLAINTIFF'S LACK OF STANDING














 INTRODUCTION 





 Plaintiff Robert Montgomery Thomas ("Mr. Montgomery Thomas"), proceeding pro se, commenced this action with the filing of a complaint on May 7, 2021 ("the Complaint"). The Complaint is entitled "Petition For Reversal Pursuant To MGL c. 40A § 17" and purports to be an appeal from the grant of a special permit to defendant Trinity Green Development, LLC ("TGD") to construct a mixed use development, including ten affordable residential units, at 655 Washington Street, Weymouth ("the Project"). TGD, which should have been named as a party as required by § 17 but was not, was allowed to intervene by order dated June 11, 2021. Those defendants other than TGD and the members of the Town's zoning board of appeals ("the ZA"), not being proper parties to a § 17 appeal, were dismissed by order dated July 12, 2021. On June 21, 2021, certain of the defendants filed Municipal Defendants' Motion For Summary Judgment Due To Lack Of Standing with supporting papers and, on June 22, 2021, TGD filed Defendant Trinity Green Development, LLC's Motion To Dismiss Pursuant to Rule 12(b)(1), also based on Mr. Montgomery Thomas's lack of standing. They are referred to collectively herein as "the Motions." Mr. Montgomery Thomas filed an opposition to the Motions and, after a hearing on July 12, 2021, the Motions were taken under advisement. For the reasons set forth below, the Motions are ALLOWED. 





RELEVANT FACTS 





 For purposes of the Motions, the following facts, contained in the record of this proceeding, are undisputed: 





 1. The Project is located at 655 Washington Street, Weymouth. Complaint ¶ 2. 





 2. The Project consists of a four-story mixed use (residential and retail/commercial) structure. Complaint Ex. 10. 





 3. The ZBA unanimously voted to grant a special permit for the Project under Weymouth Zoning Ordinance 120.25.15.B.1 Commercial Corridor Overlay ("the Special Permit"). Complaint Ex. I. 





 4. As a condition to the Special Permit, "[t]he applicant agrees that a minimum of four (4) studio/efficiency units and six (6) one-bedroom units will be affordable units for rent at rates determined by using the monthly rental rates for studio/efficiency and one-bedroom units in Boston-Cambridge-Quincy, MA-NH HUD Metro FMR Area for the applicable Fiscal Year as published by the U.S. Department of HUD, as the FY Fair Market Rent Documentation System - Final FY Boston City FMR's By Unit Bedrooms. Affordability restriction will be in perpetuity." Complaint Ex. 1. 





 5. The copy of the Town's Commercial Corridor Overlay District zoning ordinance, § 120-25.14 et seq., attached to the Complaint at Ex. 4, does not include any requirenient that projects located within its boundaries contain affordable housing. 





 6. Mr. Montgomery Thomas resides at 20 Humphrey Street, Weymouth. Complaint at 28. 





 7. Mr. Montgomery Thomas's residence is more than 5,200 feet, or nearly one mile, distant from the Project. Affidavit In Support Of Weymouth Defendants' Motion For Summary Judgment Due To Lack Of Standing, sworn to on June 11, 2021 ("GIS Administrator Aff."), ¶ 10. 





 8. Mr. Montgomery Thomas is not on the list of interested parties required by G. L. c. 40A, § 11, and prepared by the Town's Geographic Information Systems ("GIS") Adininistrator. GIS Adininistrator Aff. ¶¶ 7-8. 





 9. Mr. Montgomery Thomas is not an abutter, an owner of land directly opposite on any public or private street or way, or an abutter to an abutter within three hundred feet of the property line of the Project. GIS Administrator Aff. ¶ 9. 





STANDARD OF REVIEW 





 With respect to the Town's Motion, brought pursuant to Mass. R. Civ. P. 56, "'[s]ummary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" Green Mountain Ins. Co., Inc. v. Wakelin, 484 Mass. 222 , 226 (2020), quoting Boazova v. Safety Ins. Co., 462 Mass. 346 , 350 (2012). With respect to TGD's Motion, brought pursuant to Mass. R. Civ. P. 12 (b) (1), the court "accept[s] the factual allegations in the plaintiffs' complaint, as well as any favorable inferences reasonably drawn from them, as true." Sullivan v. Chief Justice for Admin. & Mgmt. of the Trial Court, 448 Mass. 15 , 21-22 (2006) (quotation and citations omitted). The court may also consider affidavits and other exhibits. Massachusetts State Auto. Dealers Ass'n, Inc. v. Tesla Motors MA, Inc., 469 Mass. 675 , 677 n. 8 (2014) ("A judge ruling on a motion to dismiss for lack of standing pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), may properly 

consider such submissions."). "A motion to dismiss will be granted only where it appears with certainty that the nonmoving party is not entitled to relief under any combination of facts that he could prove in support of his claims." Sullivan, 448 Mass. at 22 (citations omitted). 





ANALYSIS 





 Section 17 of G. L. c. 40A ("the Zoning Act"), allows "[a]ny person aggrieved" by a decision of a special permit granting authority to appeal to, among others, this court. "'Aggrieved person' status is a jurisdictional prerequisite. Unless brought by a municipal officer or board, a court has jurisdiction to consider a zoning appeal only if it is taken by an aggrieved person." Barvenik v. Board of Alderman, 33 Mass. App. Ct. 129 , 131 (1992). Accord Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588 , 592 (2021) ("Standing to challenge a decision of the board, pursuant to G. L. C. 40A, § 17, is a prerequisite to the Land Court's exercise of jurisdiction."). Courts have described a person aggrieved as one who "suffers some infringement of his legal rights," [Note 1]) who has "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest" which right or interest is "one that the statute under which a plaintiff claims aggrievement intends to protect." 

Standerwick v. Zoning Bd. of Appeals, 447 Mass. 20 , 27-28 (2006) (citations omitted). "To qualify for that limited class, a plaintiff must establish -- by direct facts and not by speculative personal opinion -- that his injury is special and different from the concerns of the rest of the community." Barvenik, 33 Mass. App. Ct. at 132, quoted with approval by Picard, 474 Mass. at 573-574. "The injury must be more than speculative." Sweenie, 451 Mass. at 543, citing Marashlian, 421 Mass. at 723. "Aggrievement" is not defined narrowly, 81 Spooner Rd., LLC, 461 Mass. at 700, citing Marashlian, 421 Mass. at 721, but "'[a]ggrievement requires a showing of more than minimal or slightly appreciable harm.'" 81 Spooner Rd., LLC, supra, quoting Kenner, 459 Mass. at 121 and cases cited. 





 While "[a]butters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption [that] they are 'persons aggrieved,'" Marashlian, 421 Mass. at 721, citing Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106 , 111 (1995), and Marotta v. Board of Appeals of Revere, 336 Mass. 199 , 204 (1957), Mr. Montgomery Thomas does not have the benefit of that presumption. He does, however, carry the burden of proof on the issue of his standing. Standerwick, 447 Mass. at 34 n. 20 ("[T]he plaintiff always bears the burden of proof on the issue of standing. An abutter's presumption of standing simply shifts to the defendant the burden of going forward with the evidence."). He has not carried that burden here. 





 Parsing through Mr. Montgomery Thomas's twenty-nine page complaint, Mr. Montgomery Thomas expresses his concerns about traffic in the area of the Project, which is located near where Mr. Montgomery Thomas lived until two years ago, Complaint at 1-2 ("numerous trucks spewing diesel fumes and particulates; accidents, cars scattering road trash; loud mufflers; issues with snow management and drivers speeding like madmen and madwomen traveling to and from work; littering the sidewalks and the road on their merry way"); the process by which the Commercial Corridor Overlay District zoning ordinance was conceived, Complaint at 3-4, 12-13 (Mr. Montgomery Thomas alleges that a developer who was involved in the process was also a campaign contributor to a local official and subsequently obtained approval for a project); the failure of the Town to produce one unit of affordable housing in four years, Complaint at 4; the loss of some 237 units of low income housing since 2016, Complaint at 5; the failure of the Project to address the affordable housing need and a local official's alleged complicity in that failure, Complaint at 5 (the Project "is nothing more than yet another greed-based, market-rate assault on needy seniors, the disabled and the working poor. It is a disgrace being led by a self-infatuated mayor obsessed with notoriety, power and glory who does everything he can to squelch c. 40B housing."); Mr. Montgomery Thomas's own need for affordable housing, Complaint at 7 ("To say that plaintiff is a prime candidate for affordable housing is an understatement."); Mr. Montgomery Thomas's general concerns about the appropriateness of the Project's site, the impact of the proposed structure on the neighborhood, and traffic, Complaint at 10-11; and Mr. Montgomery Thomas's opinion that, if TGD were to designate 80 of its units as affordable, rather than 10. "low-interest federal and state investment monies could possibly be available," Complaint at 13. 





 On the particular issue of Mr. Montgomery Thomas's standing, raised by Mr. Montgomery Thomas on his own initiative in his complaint, [Note 2] Mr. Montgomery Thomas asserts that "a 'pledge' of 10 affordable housing units being available to compete for is plaintiff's private legal interest and the basis for his standing." Complaint at 14. He further states, in error, that he "benefits from the presumption of aggrievement," relying on "the alleged harm of being denied the opportunity to compete fairly for affordable, low-income housing as required by law and the HPP [Housing Production Plan] signed in February 2018." Complaint at 16. At the hearing on the motions that are the subject of this order, Mr. Montgomery Thomas reiterated that he was ultimately concerned with the issue of affordable housing and, regarding the Project, the failure of the special permit to address in more precise terms how affordable units within the Project would be made available. 





 Finally, Mr. Montgomery Thomas contends that the ZBA erred in approving the Special Permit because (1) a five-foot reduction in grade at the site will likely require drilling and blasting that will disturb the quiet enjoyment of abutting neighbors (not including him) and require noise and air quality monitoring, (2) eight parking spaces will be located in the rear yard setback, and (3) utility connections and revised curb openings may be prohibited by the Massachusetts Department of Transportation. Complaint at 24. 





 Mr. Montgomery Thomas sold his home of more than thirty-two years, located approximately an eighth of a mile from the Project, in 2019. Complaint at 1. He now lives nearly a mile away, apparently as a tenant, in housing that exceeds his monthly income, hence his interest in units with affordable rent rates. See Complaint at 7. "It is not necessary to have a record ownership interest in a property in order to qualify as a person aggrieved." Liebman v. Moriarty, 25 LCR 581 , 586 (2017) (Long, J.). That being said, there must be some "violation of a private right, a private property interest, or a private legal interest" held by Mr. Montgomery Thomas, Standerwick, 447 Mass. at 27, yet he asserts none, including any arising out of any impact that the Project might have on his present residence. 





 Moreover, there is nothing that shows that the interest asserted by Mr. Montgomery Thomas-access to affordable housing-is a right or interest that is "one that the statute under which a plaintiff claims aggrievement intends to protect." Standerwick, 447 Mass. at 27-28. Affordable housing is not a concern of the zoning ordinance under which the Special Permit was granted. There is also nothing in Mr. Montgomery Thomas's generic concerns about affordable housing, traffic or the details of the permit plans submitted to the ZBA that distinguishes his concerns from those of the broader community. Mr. Montgomery Thomas has failed to establish any injury to a private right or interest of his, let alone an injury that "is special and different from the concerns of the rest of the community," Barvenik, 33 Mass. App. Ct. at 132, or that is "more than speculative." Sweenie, 451 Mass. at 543. 





 For a similar case reaching a similar result, see Butler v. Zoning Bd. of Appeals of Framingham, 85 Mass. App. Ct. 1112 (2014), 2014 Mass. App. Unpub. LEXIS 482 at *1 (Rule 23.0 opinion, formerly Rule 1:28) ("the plaintiff lives more than three miles from the project site and is not entitled to the presumption of aggrievement afforded 'parties in interest' described in G. L. c. 40A, § 11, as amended by St. 1979, c. 117. ... [H]er claimed injury is of general concern to the town as a whole, and is not particular to her or the property in which she claims an interest."). 





CONCLUSION 





 For the reasons set forth above, the Motions are ALLOWED. Municipal Defendants' Motion Requesting Plaintiff To Post A Bond and Defendant's Motion In Support of Municipal Defendants' Motion Requesting Plaintiff To Post A Bond are DENIED AS MOOT. Judgment will issue dismissing the Complaint with prejudice because of Mr. Montgomery Thomas' lack of standing to pursue the claims set forth therein. 





 SO ORDERED 





FOOTNOTES
[Note 1] Marashlian v. Zoning Bd. of Appeals, 421 Mass. 719 , 721 (1996), quoting Circle Lounge & Grille, Inc. v. Board of Appeal of Boston, 324 Mass. 427 , 430 (1949). Accord Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570 , 573-574 (2016); 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692 , 700 (2012); Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115 , 117 (2011); Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539 , 543 (2008). 

[Note 2] As noted by TGD in its memorandum of law at 2 n. 1, "[a]lthough pro se, Plaintiff has a solid grasp of the concept of requisite standing by an 'aggrieved person'-as multiple lawsuits he has initiated have been dismissed based upon lack of standing. See, e.g., Thomas v. Town of Weymouth Licensing Comm'n, No. 16-01509 (Norfolk Sup. Ct., March 1, 2019) (dismissing certiorari review of food vendor license based on lack of standing); Thomas v. Baker, No. 20-11438-FDS, 2020 WL 6870994 (D. Mass. Nov. 23, 2020) (dismissing Plaintiff's legal challenge to executive orders issued by Massachusetts Governor Charles Baker in response to the COVID-19 pandemic for lack of standing)." 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.