SUPREME JUDICIAL COURT 
 
 STEVEN E. STONE, trustee,[1] & another[2] vs. ZONING BOARD OF APPEALS OF NORTHBOROUGH & another.[3]

 
 Docket:
 SJC-13734
 
 
 Dates:
 May 7, 2025 - July 29, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Zoning, Person aggrieved, Variance, By-law. Practice, Civil, Standing, Variance, Zoning appeal, Summary judgment. Municipal Corporations, By-laws and ordinances
 
 

             Civil action commenced in the Superior Court Department on September 8, 2020.
            The case was heard by Karin M. Bell, J., on a motion for summary judgment.
            After review by the Appeals Court, 104 Mass. App. Ct. 1123 (2024), the Supreme Judicial Court granted leave to obtain further appellate review.
            Mark J. Lanza for the plaintiffs.
            Donna M. Brewer (Anthony J. Riley also present) for Cable Matters Inc.
            Ben Robbins & Natalie Logan, for New England Legal Foundation, amicus curiae, submitted a brief.
            Duane Galbi, pro se, amicus curiae, submitted a brief.
            WOLOHOJIAN, J.  The zoning board of appeals of Northborough (zoning board or board) granted a use variance to Cable Matters Inc. (Cable Matters) to build a 20,000 square foot warehouse.  The property on which Cable Matters proposed to construct and operate the warehouse is located in the industrial zoning district of Northborough (town), and the proposed building and use are permitted in that district.  However, the property is also within Area 1 of the town's groundwater protection overlay district (groundwater overlay district).  The groundwater overlay district does not permit warehouses, and it is for this reason that Cable Matters was required to obtain a use variance, which, as we have already noted, the board granted.
            The plaintiffs, who live across the street from the proposed warehouse, appealed from the board's decision to the Superior Court pursuant to G. L. c. 40A, § 17.  Acting on Cable Matters's motion for summary judgment, a Superior Court judge concluded that the plaintiffs lacked standing because they failed to show that they were aggrieved by the decision of the zoning board to allow the proposed warehouse.  The plaintiffs appealed from that ruling to the Appeals Court, where, in an unpublished decision, a panel of that court vacated the judgment on the ground that, in assessing the plaintiffs' standing, the judge should have considered not only Cable Matters's proposed use of the warehouse, but also "the uses to which an ordinary 20,000 square foot warehouse" might be put in the future.  Stone v. Zoning Bd. of Appeals of Northborough, 104 Mass. App. Ct. 1123 (2024).  
            Where, as here, there was no information to suggest that the warehouse would be used other than as represented by Cable Matters, or in a materially different way than as approved by the zoning board and by the town's planning board (planning board), we conclude that the judge properly considered the issue of the plaintiffs' standing solely in view of Cable Matters's proposed use.  Further, we discern no error in the judge's conclusion that the plaintiffs failed to present a triable issue of fact that they will be aggrieved by the proposed warehouse.  We accordingly affirm the Superior Court judge's order dismissing the plaintiffs' complaint for lack of standing.[4]
            1.  Background.  The core facts are undisputed, and we draw them from the parties' statement of material facts, see Rule 9A(b)(5)(i) of the Rules of the Superior Court (2023), and the exhibits submitted with it, while reserving certain additional facts for our later discussion.  
            Cable Matters manufactures specialty cables and other connectivity products overseas and sells them via the Internet.  The company has executed a purchase and sale agreement to buy three contiguous parcels located at 1 Lyman Street, 29 Lyman Street, and 0 Bartlett Street (collectively, the property).  The property, currently improved with a residential structure, two outbuildings, and a driveway, is 178,809 square feet (over four acres) in total.  
            Lyman Street runs approximately north to south, and Bartlett Street runs approximately east to west.  The property is situated at the southeast corner of the intersection of Lyman and Bartlett Streets, and it has frontage on both the east side of Lyman Street and the south side of Bartlett Street.  The plaintiffs reside at 152 Bartlett Street, and their property is situated on the southwest corner of the intersection of Lyman Street and Bartlett Street, having frontage on the west side of Lyman Street and the south side of Bartlett Street.  The plaintiffs' home is located across Lyman Street from the property.  
            Cable Matters proposes to build a 20,000 square foot warehouse with forty-five parking spots on the property, which is located within the town's industrial zoning district.  The warehouse will comply with all dimensional and setback requirements of the industrial zoning district, but the proposed use requires a special permit from the planning board.  
            In addition, a use variance from the zoning board is required because the property is situated in the groundwater overlay district, which does not permit warehouse use.  The purposes of the groundwater overlay district are
"(1) [t]o protect, preserve and maintain the existing and potential groundwater supply and groundwater recharge areas within the known aquifers of the town[;]
"(2) [t]o preserve and protect present and potential sources of water supply for the public health and safety[; and]
"(3) [t]o conserve the natural resources of the town."
Northborough Municipal Code § 7-07-010(A) (2021).  Under § 707010(D)(3)(a)(4) of the groundwater overlay district regulations, the board may give relief from the overlay district's restrictions if the board finds that the proposed change in use "shall not be detrimental to the water supply." 
            On February 20, 2020, Cable Matters applied to the board for a use variance.  The board conducted a hearing at which it heard evidence of the following.  Cable Matters is in the business of connectivity products, namely, cables, adapters, and docking stations.  The company has nine employees, with a plan to expand to fifteen to twenty employees in five to ten years.  Cable Matters's main office is in China, and ninety-seven percent of the goods it sells are shipped directly from there to online retailer Amazon.  The remaining three percent of orders would be fulfilled through the proposed warehouse, which would be used for distribution and sales.  No customers would come to the building.  Two to three United Parcel Service (UPS) type trucks would go to the site on a daily basis, and there would be one tractor trailer delivery each month.  Nothing detrimental to air, soil, or groundwater would be stored on the property.  Although the soil and site were suitable for a septic system, Cable Matters agreed to connect to the sewer if it was available near the site at the time of construction.  Given the property's location at the northwest edge of the groundwater overlay district, the proposed warehouse would not have an adverse impact on the groundwater.  Moreover, the town did not currently use the town wells, and the town engineer acknowledged that he did not anticipate that the town wells would be put back into service.  The plaintiffs expressed opposition to the project, but the record does not show what information they put before the zoning board.
            The board found that the prohibition on warehouse use in the groundwater overlay district was the only reason a variance was required.  Otherwise, the board concluded that the proposed use was allowed as of right in the industrial district, and that no dimensional variances were required.[5]  The board also found that the warehouse would be set back one hundred feet from a residential zone, as required by the bylaws.  It also found that no hazardous materials would be stored at the warehouse beyond quantities that would be found in a residence.  The board found that the town wells were not currently used, and that there were no current plans to return them to use.  The board also found that the town's groundwater advisory committee had voted in favor of recommending the project, subject to certain conditions.[6]  The board found that the proposed use of the property, as presented, posed no risk to groundwater and would be no more detrimental to the groundwater than the existing residence and two barns.  
            The board granted the use variance, concluding that
"[d]ue to circumstances relating to the fact that the soil conditions, shape, and topography of the lot include considerable open space and wetlands which limit the use of the [four]-acre lot; and its location fronting on Lyman Street and Bartlett Street, affecting the subject property but not necessarily property in the same zoning district, a literal interpretation of the [z]oning [b]ylaw would involve substantial hardship.  The [b]oard agrees with the facts presented by [Cable Matters] for the unique characteristics of this parcel including the location in a far corner of the [o]verlay [z]one and it being surrounded in that zone by other industrial buildings and uses."  
            Cable Matters then applied to the planning board for a special permit.  After a hearing, the planning board found that "the project, given its size and scale, is located in an appropriate setting for its use; that the project will not adversely affect the neighborhood in which it is situated; that it will not create nuisance and hazard to pedestrians and vehicles in the area within and surrounding the site; that adequate facilities are provided; and that the proposal is in substantial harmony with the Northborough Master Plan and . . . with the purposes of the [z]oning [b]ylaw."  Consistent with these findings, the planning board awarded the special permit.
            Importantly, the planning board's approval was subject to numerous conditions, including (1) restricting storage of materials on the site; (2) requiring that the parking lot lights be shut off by 9 P.M. every night; (3) maintaining "in perpetuity" landscaping as shown on the site plan; (4) limiting the hours of delivery to weekdays between 9 A.M. and 8 P.M., with no deliveries to occur on weekends; and (5) restricting the Lyman Street driveway to exiting vehicles only.  In addition, the planning board's approval was conditioned on the project being built as shown on the approved plan and that any deviations from the approved plan be approved prior to the issuance of a certificate of occupancy.  The plaintiffs did not appeal from the planning board's decision.  
            The plaintiffs did, however, appeal from the decision of the zoning board to the Superior Court, where they sought to annul the zoning board's decision.  See G. L. c. 40A, § 17.  After discovery, Cable Matters moved for summary judgment on the ground that the plaintiffs lacked standing.[7]  In support of its motion, Cable Matters submitted a stormwater report prepared by an engineering firm that in essence concluded that the proposed warehouse project would not have a deleterious effect on stormwater runoff.  Cable Matters also submitted a traffic study showing that the proposed warehouse would entail only thirty-two traffic trips in total per day:  eight passenger cars (totaling twenty-six traffic trips), one United States Postal Service van or small truck (two traffic trips), two UPS vans or small trucks (four traffic trips), and one tractor trailer every two to three months.  
            In opposition, the plaintiffs argued that, as abutters, they were entitled to presumptive standing and that Cable Matters had not rebutted that presumption.[8]  The plaintiffs claimed that the proposed warehouse would produce "excessive noise during construction and post-construction noise from trucking and loading operations, unnatural light, vibration, concussion, offensive odors and loss of open space."  More specifically, Stone submitted an affidavit in which he averred that the warehouse would be located approximately eighty feet from his home, that the loading dock would be located on the side of the warehouse facing his property, that "beepers" would sound when trucks back up, and that exhaust fumes from large tractor trailers would be detectable from his home.  Further, Stone averred that "unnatural light" would be visible from his home after sunset, and that headlights from cars exiting the site onto Lyman Street would shine into his home.  The plaintiffs relied solely on their own assessment of the impacts that the project would have on their property; they did not submit the opinion of an expert.
            The plaintiffs admitted that there is already heavy industrial and commercial traffic in connection with the existing uses on the industrially zoned lots in the area of their home, and that such uses include warehouses operated by a regional trucking company, FedEx, and Amazon, a T-shirt business, a wholesale distributor of snowplows, and a medical supply company, as well as other trucking and distribution businesses.  They also admitted that warehouses directly east and south of their home create substantial large truck traffic twenty-four hours a day, seven days a week.
            The plaintiffs also admitted that Cable Matters "will be required to operate its business within the limitations set forth in the [s]pecial [p]ermit [d]ecision and that some of the limitations i[n] said decision are relevant to the [p]laintiffs' bases for aggrievement under the [zoning board's] [d]ecision."  
            The Superior Court judge ruled that the plaintiffs enjoyed presumptive standing by virtue of being located across the street from the project, that Cable Matters successfully rebutted that presumption, and that the plaintiffs thereafter failed to meet their burden to establish standing.  As to excessive noise, the judge left open whether construction noise was an interest protected by the zoning laws and regulations, but determined in any event that there was no evidence regarding the existence, nature, or quantity of construction noise or that such noise would harm the plaintiffs, let alone in manner or degree different from other surrounding businesses and homes.  The judge concluded that the summary judgment record did not support the plaintiffs' claim of excessive postconstruction noise.  The judge noted that the plaintiffs admitted that there was already excessive noise twenty-four hours a day, seven days a week, from other businesses near their home, and that they relied on speculation and conjecture with respect to any future noise from Cable Matters's warehouse.  As to fumes, the judge concluded that any impact from one monthly tractor trailer delivery to the warehouse would be de minimis.  With respect to unnatural light, the judge concluded that the plaintiffs had not offered any support for their claim that headlights would shine into their home after dark, and that they had offered no other evidence of any non de minimis harm.  Finally, the judge rejected the plaintiffs' suggestion that they had a protectable interest in the removal of trees required to construct the warehouse.  The judge accordingly allowed Cable Matters's motion for summary judgment.
            The plaintiffs appealed to the Appeals Court.  In an unpublished decision, a panel of that court did not address, let alone quarrel with, the Superior Court judge's analysis of the plaintiffs' standing vis-à-vis the warehouse as proposed.  Nor did the panel take into account the conditions imposed on the project by the special permit or the admitted significance of those conditions to the issue of the plaintiffs' standing.  Instead, the panel rested its decision on a ground unsupported by the summary judgment record that the plaintiffs had not advanced and neither side had addressed:  namely, that Cable Matters's proposed use of the warehouse was "unusually light," and, therefore, the Superior Court judge should have also considered "the uses to which an ordinary 20,000 square foot warehouse" might be put in the future.  On that basis, the panel vacated the judgment and remanded for further proceedings.  
            We allowed Cable Matters's application for further appellate review in order to consider whether the plaintiffs' standing to challenge the permitting authority's decision concerning Cable Matters's actual proposed use can rest on a potential future use of the property.
            2.  Discussion.  We review de novo the allowance of a summary judgment motion on the issue of standing, and we view the evidentiary record in the light most favorable to the party against whom summary judgment entered.  81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012).
            Only a "person aggrieved" has standing under the Zoning Act, G. L. c. 40A, § 17, to challenge a decision of a zoning board of appeals.  G. L. c. 40A, § 17.  Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 212 (2020).  "To be 'aggrieved' for these purposes, a person must suffer 'some infringement of his legal rights.'"  Murchison, 485 Mass. at 213, quoting Sweenie v. A.L. Prime Energy Consultants, 451 Mass. 539, 543 (2008).  "The right or interest asserted by a plaintiff claiming aggrievement must be one that G. L. c. 40A is intended to protect."  Kenner v. Zoning Bd. of Appeals of Chatham, 459 Mass. 115, 120 (2011).  See Harvard Sq. Defense Fund, Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491, 492-493 (1989).  Although the "language of a bylaw cannot be sufficient in itself to confer standing," Sweenie, 451 Mass. at 545, a municipality's zoning bylaw may identify protected interests that "may impart standing to a person whose impaired interest falls within that definition" (citation omitted), Kenner, 459 Mass. at 120.  See Picard v. Zoning Bd. of Appeals of Westminster, 474 Mass. 570, 573 (2016).  While "[w]e do not define aggrievement narrowly," 81 Spooner Rd., LLC, 461 Mass. at 700, "[a]ggrievement requires a showing of more than minimal or slightly appreciable harm," Kenner, 459 Mass. at 121, and the plaintiff's claimed "injury must be more than speculative," Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 721 (1996).  "Put slightly differently, the analysis is whether the plaintiffs have put forth credible evidence to show that they will be injured or harmed by proposed changes to an abutting property, not whether they simply will be 'impacted' by such changes."  Picard, 474 Mass. at 573, quoting Kenner, 459 Mass. at 122.  Moreover, "[s]tanding as an 'aggrieved' person requires evidence of an injury particular to the plaintiffs, as opposed to the neighborhood in general[;] the injury must be causally related to violation of the zoning laws[;] and it must be more than de minimis."  Murchison, 485 Mass. at 214.
            Those who are entitled to notice under G. L. c. 40A, § 11,[9] enjoy a rebuttable presumption that they are "persons aggrieved" for purposes of the Zoning Act.  Murchison, 485 Mass. at 213.  Standerwick v. Zoning Bd. of Appeals of Andover, 447 Mass. 20, 33 (2006).  The presumption of standing does not shift the burden of proof.  "The plaintiff always bears the burden of proving aggrievement necessary to confer standing; an abutter's presumption of standing simply places on the adverse party the initial burden of going forward with evidence."  81 Spooner Rd., LLC, 461 Mass. at 701.
            In the context of a motion for summary judgment, there are three ways by which an adverse party can rebut an abutter's presumed standing.  First, "a defendant can rebut the presumption by showing that, as a matter of law, the claims of aggrievement raised by an abutter, either in the complaint or during discovery, are not interests that the Zoning Act is intended to protect."  81 Spooner Rd., LLC, 461 Mass. at 702.  "Second, where an abutter has alleged harm to an interest protected by the zoning laws, a defendant can rebut the presumption of standing by coming forward with credible affirmative evidence that refutes the presumption."[10]  Id.  "For example, the defendant may present affidavits of experts establishing that an abutter's allegations of harm are unfounded or de minimis."  Id.  Third, "where a plaintiff acknowledges during discovery a lack of substantive evidence to establish a legally cognizable injury, a defendant may rely on those admissions to rebut the plaintiff's presumption of standing, rather than presenting independent evidence that would warrant a finding of no aggrievement."  Id. at 703-704.
            If the summary judgment record shows that the defendant has rebutted the plaintiff's presumption of standing, the plaintiff must then establish standing by putting forth credible evidence to substantiate his or her allegations of aggrievement.  81 Spooner Rd., LLC, 461 Mass. at 701.  "This requires that the plaintiff 'establish -- by direct facts and not by speculative personal opinion -- that his injury is special and different from the concerns of the rest of the community.'"  Id., quoting Standerwick, 447 Mass. at 33.  "At that juncture, the jurisdictional issue of standing will be decided on the basis of all the evidence, with no benefit to the plaintiff from the presumption of aggrievement."  81 Spooner Rd., LLC, 461 Mass. at 701.
            Here, there is no dispute that the plaintiffs are entitled to a rebuttable presumption of standing; their property is directly across the street from Cable Matters's proposed warehouse.  See G. L. c. 40A, § 11; Marashlian, 421 Mass. at 721-722 (plaintiffs owning property across street from proposed project had rebuttably presumed standing).  We accordingly examine the summary judgment record in the light most favorable to the plaintiffs with respect to each of the zoning interests the plaintiffs allege will be harmed by the proposed warehouse to determine whether Cable Matters has rebutted the presumption of standing and, if so, whether the plaintiffs raised a triable issue of fact concerning their claims of aggrievement.  It is an unusual feature of this case that the plaintiffs do not claim any aggrievement relating to the interests protected by the groundwater overlay district regulations -- even though that was the issue before the board.  Instead, they claim aggrievement from "excessive noise during construction and post-construction noise from trucking and loading operations, unnatural light, vibration, concussion, offensive odors and loss of open space."  These claims stem from § 7-05-010(G)(2) of the town's bylaws, which provides that 
"no use shall be permitted which would be offensive because of injurious or noxious noise, vibration, smoke, gas, fumes, odors, dust, debris, glare, radiation, or electrical interference, or other objectionable features, or be hazardous to the town due to fire or explosions or the creation of traffic hazards, or any other cause." 
Northborough Municipal Code § 7-05-010(G)(2).[11]
            a.  Excessive noise.  The plaintiffs contend that they will be harmed by excessive noise during the construction of the warehouse, by excessive postconstruction noise, and by excessive noise from trucking and loading operations.  As to construction noise, the plaintiffs have not pointed to any portion of the Zoning Act or the local bylaws that identifies temporary construction noise as a protectable interest.  In any event, they have raised no triable issue of fact concerning the amount or extent of construction noise, let alone that it will be "excessive"; indeed, the summary judgment record is completely silent on these points.  See Murchison, 485 Mass. at 215 (speculation and conjecture regarding noise is insufficient to establish standing).
            The plaintiffs have shown that noise from the project's use as a warehouse, postconstruction, is an interest protected by the town's bylaw.  See Northborough Municipal Code § 705010(G)(2).  But there is simply nothing in the summary judgment record to indicate what, if any, noise will be associated with the operation of the warehouse after it is built.  See Murchison, 485 Mass. at 215.
            This leaves the plaintiffs' contention that the noise from trucks, particularly when idling and beeping while backing up, will disturb the enjoyment of their own property.  Cable Matters has rebutted this contention with a traffic report showing only minimal comings and goings by trucks.  The plaintiffs did not supply a countervailing expert opinion of their own, instead relying solely on their own personal assessment that noise from the postal and UPS trucks, as well as the infrequent tractor trailer, will have an impact on the enjoyment of their home.  This was not enough.  See Picard, 474 Mass. at 575 (plaintiff's personal beliefs properly regarded as "conjecture, personal opinion, and hypothesis").  Moreover, the plaintiffs admitted that they are already surrounded by heavy truck traffic twentyfour hours a day, seven days a week, from existing warehouses in the neighborhood, and they did not explain how noise from the few trucks that will service Cable Matters's warehouse will be anything other than de minimis.  See Kenner, 459 Mass. at 121 (plaintiffs required to show "more than minimal or slightly appreciable harm").
            b.  Unnatural light.  The plaintiffs contend that they will be harmed by unnatural light that will be visible from their home after dark, including from headlights of motor vehicles exiting the warehouse site after sunset.  We accept for these purposes that "unnatural light" falls within the term "glare" as it appears in § 7-05-010(G)(2) of the town's bylaws and, thus, that it is a protectable interest under the zoning regulations.  That said, the plaintiffs' contention regarding unnatural light does not take into account, or address in any way, the fact that Cable Matters's use of the warehouse after dark will be limited by the conditions imposed by the planning board.  Specifically, the parking lot lights are required to be turned off after 9 P.M., and deliveries are allowed only on weekdays between the hours of 9 A.M. and 8 P.M.  See Harvard Sq. Defense Fund, Inc., 27 Mass. App. Ct. at 494 ("because of the special conditions annexed to the permits in order to discourage the use of automobiles, it is at best speculative whether the project will cause any increased traffic or parking problems").  Nor do the plaintiffs address Cable Matters's traffic report, which showed that vehicles will exit the site only sixteen times over the course of a day.  Without addressing the specifics of the use allowed under the conditions imposed by the planning board and the contents of the traffic report, the plaintiffs' assertion of aggrievement amounted to no more than an unsubstantiated hypothesis.  See Marashlian, 421 Mass. at 723 n.5 ("possibility that headlights from automobiles in an adjacent parking lot will shine in the plaintiff's window is just the type of 'uncorroborated speculations' sought to be avoided by the standing requirements of G. L. c. 40A, § 17").  See also Picard, 474 Mass. at 575.
            c.  Vibration and concussion.  Vibration is an interest protected under § 7-05-010(G)(2) of the town's bylaws, and the plaintiffs contend that they will be aggrieved by vibration caused by trucks backing into the loading docks of the proposed warehouse.  The contention is based solely on Stone's "experience being around business my whole life.  [The use] will make vibration.  It will make concussion.  The trucks will come and go."  Stone's personal opinion did not purport to explain or substantiate the level of vibration or concussion that would be created by ordinary postal or UPS trucks using the loading dock, nor did it take into account that only one tractor trailer per month would use the loading dock.  Nor did the plaintiffs show whether (and, if so, to what extent) vibration would travel across Lyman Street to their home.  Neither speculation nor common sense is sufficient to establish aggrievement.  See Butler v. Waltham, 63 Mass. App. Ct. 435, 443 (2005) ("common sense" does not alone establish aggrievement).
            d.  Offensive odors.  Odor is an interest protected under § 7-05-010(G)(2) of the town's bylaws, and the plaintiffs contend that they will be aggrieved by the odor of diesel fuel from idling trucks at the warehouse site.  The contention is based solely on plaintiff Stone's personal opinion based on "his general knowledge of trucks and the general proximity of the two properties."  For the same reasons we have already stated with respect to noise, unnatural light, vibration, and concussion, this was insufficient to establish a triable issue of fact concerning the plaintiffs' aggrievement by odors emanating from the proposed warehouse use.
            e.  Loss of open space.  Finally, the plaintiffs argue that they will be aggrieved by the "loss of open space," namely, the cutting down of trees on Cable Matters's property as part of the construction of the warehouse site.  The Superior Court judge concluded that the removal of trees on another's property is not an interest protected under the Zoning Act.  On appeal, the plaintiffs do not argue that the Superior Court judge's conclusion was in error, nor do we discern any error in this regard.  Cf. Shiel v. Rowell, 480 Mass. 106, 107 (2018), quoting Michalson v. Nutting, 275 Mass. 232, 233 (1931) ("owner of land is at liberty to use his land, and all of it, to grow trees").  
            f.  Potential future use.  For the foregoing reasons, the Appeals Court should have affirmed the Superior Court judge's ruling that the plaintiffs failed to establish standing.  Instead, relying on Allegaert v. Harbor View Hotel Owner LLC, 100 Mass. App. Ct. 483, 490 (2021), the panel vacated the judgment and remanded the case with an instruction that the judge was to consider "the uses to which an ordinary 20,000 square foot warehouse" might be put in the future.  We see several infirmities with this approach, which, in any event, finds no support in our case law.
            To begin with, the plaintiffs did not argue -- either to the board, the Superior Court, or the Appeals Court -- that potential future uses of the project were relevant to the issue of their standing to challenge Cable Matters's proposed use.  Nor did the plaintiffs create a factual record showing an "ordinary" warehouse's uses, or that those uses might differ from Cable Matters's use.  In reviewing a motion for summary judgment, an appellate court is "confined to an examination of the materials before the court at the time the rulings were made."  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 400 (2003), quoting Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass'n, 399 Mass. 886, 889 n.9 (1987).  Thus, by requiring the Superior Court judge to consider future potential use about which there was no information in the record, the panel strayed beyond the permissible inquiry and invited the judge to engage in speculation -- something our cases have repeatedly emphasized cannot be done to establish standing.  See, e.g., Murchison, 485 Mass. at 212; Kenner, 459 Mass. at 124; Sweenie, 451 Mass. at 545-546; Standerwick, 447 Mass. at 36; Marashlian, 421 Mass. at 723 n.5.  In assessing the plaintiffs' standing to challenge the grant of a variance for Cable Matters's proposed actual use, the judge could not consider hypothetical future uses of Cable Matters's proposed warehouse unsupported by the summary judgment record, and it was error for the Appeals Court panel to require the judge to do so.
            Furthermore, Allegaert, 100 Mass. App. Ct. 483, upon which the panel relied, does not support the panel's approach.  Allegaert concerned two issues, neither of which was standing under G. L. c. 40A, § 17.  The first issue was whether the complaint sufficiently stated a claim that the zoning board's decision was invalid on the basis of a defect in notice.  Id. at 489.  The second was whether the plaintiffs' enforcement action was barred by claim preclusion.  Id. at 491.  In this latter context, the principal point to be determined was whether a previously issued special permit allowing service of food and beverages on a hotel's pool deck also encompassed service of food and beverages at the bar.  Id.  The answer to this question turned on the interpretation of that special permit to determine whether the hotel's later proposed use of the bar fell within it.  Allegaert does not stand for the proposition that potential future uses that are different in nature or degree from the actual use proposed by a property owner must be considered to determine whether a plaintiff has standing to challenge the initial issuance of a special permit or variance.  Rather, for the reasons that follow, the inquiry entailed in an enforcement action is distinct from that entailed in determining whether there is standing to appeal from the decision of a permitting authority to grant zoning relief.  
            An enforcement request requires a local enforcement officer to determine whether the "construction, alteration or moving of any building or structure" is "in violation of any zoning ordinance or by-law."  G. L. c. 40A, § 7.  "[B]ecause uses of real property may evolve or change over time, an aggrieved person may not know of the precise contours, extent, or even existence of all uses of property at the same point in time, and because towns have an ongoing interest in the use of property within their boundaries," an abutter may -– unless prohibited by the ten-year statute of repose contained in G. L. c. 40A, § 7 –- make multiple or successive requests for zoning enforcement.  Fisher v. Presti Family Ltd. Partnership, 100 Mass. App. Ct. 234, 244 (2021).  In an enforcement context, the evolving use of a property will be relevant in determining whether the use remains within the provisions of the zoning regulations.  But that was not the question presented in this case.  Instead, the question was only whether the summary judgment record was sufficient to establish that the plaintiffs were aggrieved by the zoning board's decision to grant a variance for the warehouse as proposed to, and approved by, the zoning board.
            3.  Conclusion.  The judgment of dismissal for lack of standing is affirmed.
So ordered.
footnotes

            [1] Of the One Fifty-Two Bartlett Street Trust.
            [2] Anne Beckstrom.
            [3] Cable Matters Inc.
            [4] We acknowledge the amicus briefs submitted by the New England Legal Foundation and Duane Galbi.
            [5] Although the board found that a warehouse is permitted as of right in the industrial zoning district, the town's bylaws indicate that a warehouse use in the industrial zoning district requires a special permit.  See G. L. c. 40A, § 1A (defining "as of right" as "development that may proceed under a zoning ordinance or by-law without the need for a special permit").  The board's determination that the use was as of right in the industrial district is immaterial here, where it is undisputed that Cable Matters applied for, and obtained, a special permit.
            [6] The conditions recommended by the groundwater advisory committee were that (1) there be no storage of toxic or hazardous chemicals beyond an amount normally found in a single-family house, (2) Cable Matters comply with a particular section of the groundwater overlay district regarding quantities of runoff, and (3) Cable Matters consider connecting to town sewer if a connection were available within 800 feet of the property line.
            [7] Cable Matters also moved for summary judgment on the alternate ground that the zoning board's decision was not legally untenable, unreasonable, whimsical, capricious, or arbitrary.  Because we conclude, as did the Superior Court judge, that the plaintiffs lack standing, we need not and do not reach this argument.
            [8] The plaintiffs also attacked the merits of the zoning board's decision, but that is not before us.  See note 7, supra.
            [9] Persons entitled to notice are those who are "parties in interest."  G. L. c. 40A, § 11.  "'Parties in interest' as used in [c. 40A] shall mean the petitioner, abutters, owners of land directly opposite on any public or private street or way, and abutters to the abutters within three hundred feet of the property line of the petitioner as they appear on the most recent applicable tax list, notwithstanding that the land of any such owner is located in another city or town, the planning board of the city or town, and the planning board of every abutting city or town."  G. L. c. 40A, § 11.
            [10] "'[C]redible evidence' has both a quantitative and a qualitative component."  Butler v. Waltham, 63 Mass. App. Ct. 435, 441 (2005).  "Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff has made.  Qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action.  Conjecture, personal opinion, and hypothesis are therefore insufficient."  (Citation omitted.)  Id.
            [11] The zoning bylaws are included in the record on appeal.  See Warren v. Zoning Bd. of Appeals of Amherst, 383 Mass. 1, 8 (1981) (appellate court may not take judicial notice of zoning bylaws that are not included in record on appeal).